**Matthew E. BARNES and Lisa Fay Barnes, Plaintiffs,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Defendant.**

**No. 85–CV–70981–DT.**

United States District Court, E.D. Michigan, S.D.

Dec. 11, 1985.

Stephen M. Losh, Losh & Fabian, P.C., Farmington Hills, Mich., for plaintiffs.

Patrick A. King, Paul H. Johnson, Jr., Denenberg, Tuffley, Thorpe, Bocan & Patrick, Southfield, Mich., for defendant.

### ORDER AND MEMORANDUM

COHN, District Judge.

#### I.

This suit arises out of defendant's refusal to pay for losses incurred during a fire.

There is no genuine dispute over the material facts. Matthew Barnes (Barnes), along with his prior wife Eileen, were insured by defendant against loss by fire and other causes. A fire damaged the insured property (real and personal) on August 19, 1984. Defendant refused to pay Barnes's claim for loss because it accused him of complicity in arson. Plaintiffs subsequently brought this suit. The contract of insurance is the Michigan Standard Fire Policy, Mich.Comp.Laws § 500.2832.

Defendant moves for summary judgment as to the claim of Lisa Fay Barnes (Lisa), Barnes's current wife, on several grounds. First, defendant argues that Lisa was not an insured under the policy. Apparently, Barnes divorced Eileen on January 7, 1981 and subsequently married Lisa on July 27, 1983, before the fire. Defendant says that, as part of the property settlement, Barnes obtained a quitclaim deed to the insured real property and ownership of the household furnishings. Lisa's name is not on the Declaration portion of the policy. Lisa points out that she had a dower interest in the real property. Mich.Comp.Laws § 558.1 *et seq.*

Second, defendant argues that Lisa did not sign the "Sworn Statement in Proof of Loss" (proof of loss) (D's Ex. B), as required by the policy and statute. While defendant does not contest Barnes's compliance with this requirement, defendant argues that Lisa's failure to sign the form precludes her claim, especially since Barnes listed Eileen as the second insured on the proof of loss. Lisa argues that her husband's signature was sufficient to preserve her claim, especially since her failure to sign did not prejudice defendant.

■ A third issue discussed by the parties is the effect of Lisa's failure to appear at the Examination Under Oath. Because I conclude that Lisa cannot rely on her husband's signature on the proof of loss, I need not address the other issues,[1] and

---

**1.** It is clear, however, that Lisa was an insured by the contract's own definition. An insured

may be identified in a policy either by name or by description. 43 Am.Jur.2d, *Insurance* § 190

defendant's motion for summary judgment as to Lisa's claim is GRANTED.

## II.

Summary judgment may be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The evidence, together with all inferences to be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). The movant's papers are to be closely scrutinized while those of the opponent are to be viewed indulgently. *Id: Invictus Records v. American Broadcasting Companies, Inc.*, 98 F.R.D. 419, 426 (E.D.Mich.1982). The function of summary judgment is to dispose of cases without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution by a jury or other factfinder. *Schultz v. Newsweek, Inc.*, 668 F.2d 911 (6th Cir. 1982).

## III.

The contract in question and statute require that the insureds submit a proof of loss within 60 days after the loss. Defendant does not contest Barnes's compliance with this requirement. Lisa did not sign the proof of loss, however, and it is now too late for her to file her own proof of loss. Thus, her interest in the policy is preserved only if her husband's signature preserves her interest as well.

Defendant cites *Reynolds v. Allstate Ins. Co.*, 123 Mich.App. 488, 332 N.W.2d 583 (1983), *leave to appeal denied*, 418 Mich. 923 (1984), for the proposition that failure to file a proof of loss within the time limits of the policy justifies summary judgment for the insurer. This is the general rule, and the failure of an insured to substantially comply will normally preclude an action on the contract. Plaintiffs say that *Reynolds* is inapplicable here because defendant received notice of the loss. Plaintiffs say defendant is not prejudiced by the failure of Lisa to sign the proof of loss because defendant received timely notice, made an investigation of the fire and damage, dealt with a public adjuster, and made a private cause and origin investigation. Plaintiff also says strict compliance is not required, but only "substantial compliance." *Couch on Insurance 2d, Proof of Loss*, § 49A:20, pp. 547–48.

The policy behind requiring a proof of loss is "to allow the insurer to form an intelligent estimate of its rights and liabilities, to afford it an opportunity for investigation, and to prevent fraud and imposition upon it." 44 Am.Jur.2d at § 1323, citing *Wehner v. Foster*, 331 Mich. 113, 49 N.W.2d 87 (1951); *Wisconsin Michigan Power Co. v. General Casualty & Surety Co.*, 252 Mich. 331, 233 N.W.2d 333 (1930). Notice is not the only purpose, however. One purpose of the proof of loss is to obtain a statement of the loss from the insured under oath such as will subsequently bind the insured and protect against the imposition of fraud. In this case, this latter purpose has not been served by Barnes's filing by himself. The failure of Lisa to sign for herself means that she is not bound by any statements as her own. Further, Lisa is not bound by her husband's statements under oath. This could act to prejudice defendant at trial, since it could not impeach her with out-of-court testimony taken under oath. Thus, there is not "substantial compliance," since to excuse Lisa's omission here would allow her to subvert an important policy supporting the requirement of a proof of loss.

---

(1982). The policy's definition of "insured" grants a protectable interest to "the spouse if a resident of the same household." (Policy, p. 2) There being no dispute that Lisa is the legal wife of Barnes and resided in his household, she has a protected interest under the policy. Annot., 1 A.L.R.2d 561 (1948). Although Barnes listed only himself as the insured on the proof of loss (he indicated that Eileen no longer had an interest in the property) (D's Ex. B), defendant does not cite any case that says this destroys Lisa's interest under the definition of "insured". Further, defendant was not prejudiced by this omission.

▉ Also, Lisa's proclaimed belief that her husband's signature was valid as to her (Affidavit ¶ 2) does not excuse her failure to sign. The insured must make out the proof of loss herself or show good reason for not so doing, and the insured has the burden of proving that the case is within the exception to the rule requiring proof of loss made out by the insured. *McGraw v. Germania Fire Ins. Co.*, 54 Mich. 145, 19 N.W. 927 (1884). While certain mistakes of fact might excuse Lisa's failure to timely sign a proof of loss, *see* 44 Am.Jur.2d, at § 1338; Annot., 24 A.L.R.3d 1007, a legal mistake does not excuse noncompliance.[2]

At the hearing on December 9, 1985, plaintiffs also relied on *Rott v. Westchester Fire Ins. Co.*, 218 Mich. 576, 188 N.W. 334 (1922). In that case, the insured's automobile, which was insured by the defendant, was damaged in a fire. The policy required that the plaintiff submit a proof of loss. The policy also provided that, in the event that the insured and the insurer disagreed as to the valuation of damage, the matter would be submitted for arbitration by a disinterested appraiser. Instead of filing a proof of loss, a written statement was prepared by the adjuster and signed and verified under oath by the insured. No suggestion was made to the plaintiff by either the adjuster or the insurer that other or further proof of loss was required.

The automobile was examined soon after the fire by the defendant's adjuster. The defendant refused to pay the full amount of loss claimed under the policy, and told the insured he would have to bring suit to collect more. The Michigan Supreme Court held that, by its oral refusal to negotiate the value of the loss in good faith, the insurer had created an issue for the jury as to whether it had waived its right to arbitration. The Court upheld the jury's finding that the insurer, by its words, had in fact waived the right to arbitration. The Court also held that it was a question for the jury whether the insurer's statements also waived its right to require proofs of loss, and upheld the jury's finding that the insurer had in fact waived its right to proofs of loss. The Court said:

> If the conduct and acts and conversation of the adjuster would induce an honest belief on the part of [plaintiff] that the proofs that were being made, and the certificates that were being furnished, and the negotiations that were being had, were all the company required, and that [plaintiff] acted with an honest belief that these were all the company required, and that he was warranted from the facts in entertaining that belief in good faith, as a reasonable man, then the jury would be justified in finding that the formal proofs of loss were waived on the part of the company.

218 Mich. at 581, 188 N.W. 334, quoting *Gristock v. The Royal Ins. Co.*, 84 Mich. 161, 165, 47 N.W. 549 (1890).

The facts in the instant case do not support plaintiffs' reliance on *Rott*, and therefore do not excuse Lisa's failure to sign the proof of loss. Certainly there was no written waiver by defendant of the proof of loss requirement, as required by the contract and statute. Further, plaintiffs have identified no statement or combination of statements by defendant that would give rise to a good faith belief that the insurer was waiving its right under the contract and statute to a signed proof of loss by the insureds, and thus plaintiffs have demonstrated no question of fact for a jury. Defendant's challenge to plaintiffs' claim does not rise to the level of bad faith that was evidenced in *Rott*. Were the courts to adopt plaintiffs' view of the law, every challenge to a claim made by an insurance company would create a question for a jury as to whether the insurer had waived its right under the contract to a proof of loss. This is not the law. Further, the insured in *Rott* had verified his claim under oath, thus protecting the insurer against fraud and fulfilling one of the primary purposes of a proof of loss. This is distinguished from the instant case, where Lisa's failure to

---

**2.** In light of the fact that an adjuster helped plaintiffs with their claim, including preparation of the proof of loss, Lisa's explanation is also questionable.

sign under oath diminishes the insurer's protection against the imposition of a fraud at trial.

*Reynolds v. Allstate Ins. Co., supra,* is controlling in this case to deny Lisa an interest in the policy. The Michigan Court of Appeals ruled that denial of the plaintiff's claim did not waive compliance with the proof of loss requirement, where there had been no written waiver of the policy's proof of loss provision. Apparently the law is otherwise where the denial of the claim occurs during the period prescribed by the policy for the presentation of the proof of loss, *see* Levin, J.'s, dissent from denial of leave to appeal, 418 Mich. 924. That is not the case here. The fire occurred on August 19, 1984. Defendant's denial of the claim is dated November 21, 1984, 94 days after the fire and more than a month after the time for submitting the proof of loss had expired. (D's Answer, Ex. A) Lisa's failure to sign a proof of loss is conclusive to deny her claim.