Daniel W. WINEHOLT, d/b/a Wineholt Leasing, Plaintiff,

v.

CINCINNATI INSURANCE COMPANY, Defendant.

No. 1:01–CV–67.

United States District Court, W.D. Michigan, Southern Division.

July 27, 2001.

Brian D. Vincent, Grand Rapids, MI, for Plaintiff.

Lawrence P. Mulligan, Grand Rapids, MI, for Defendant.

## OPINION

QUIST, District Judge.

Plaintiff, Daniel Wineholt ("Wineholt"), has sued Defendant, Cincinnati Insurance Company ("CIC"), alleging that CIC breached the terms of an insurance policy by failing to pay Wineholt for a loss covered by the policy. Wineholt initially filed this case in Kent County Circuit Court. On January 29, 2001, CIC removed the case to this Court on the basis of diversity jurisdiction. Now before the Court is CIC's motion for summary judgment.

### Facts

Wineholt is in the equipment leasing business. Prior to 1999, Wineholt entered into leasing contracts with a company known as Thermo Treaters, LTD ("Thermo Treaters") covering several large pieces of heat treating equipment with components (the "Equipment"). CIC issued insurance policy no. CPP 067 80 38 (the "Policy") to Thermo Treaters for the policy term of December 13, 1996, to December 13, 1999. The Policy covered property used by Thermo Treaters in its business, including the Equipment. Under the "Loss Conditions" section of the Commercial Property Coverage, the Policy stated:

3. **Duties in the Event of Loss or Damage**

 a. You must see that the following are done in the event of loss or damage to Covered Property.

 . . . . .

 7. Send us a signed sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days

after our request. We will supply you with the necessary forms.

(Policy, FM 101 01 92 at 8, Rouse Aff. Ex. A.) In addition, under the "Commercial Property Conditions" section, the Policy stated:

### D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part.

(*Id.*, CP 00 90 07 88.)

In January of 1997, Thermo Treaters filed for protection under Chapter 11 of the Bankruptcy Code. Wineholt was prevented from obtaining the Equipment as a result of the automatic stay and sought to obtain a lift of the stay by filing a motion with the bankruptcy court. Eventually, Wineholt, Thermo Treaters, and others entered into a stipulation which allowed Thermo Treaters to retain the Equipment and required Thermo Treaters to pay Wineholt for use of the Equipment during the bankruptcy proceedings. In addition, Thermo Treaters was required to add Wineholt as an additional insured under the Policy. After operating for some period of time under Chapter Eleven, Thermo Treaters ceased operations, and its bankruptcy case was converted to a Chapter 7 liquidation.

On April 12, 1999, Wineholt was permitted to inspect the Equipment on the former Thermo Treaters' business premises. At that time, Wineholt discovered that the Equipment had been vandalized and parts had been stripped from the Equipment. Wineholt reported the vandalism/theft to the police the same day. On May 21, 1999, Wineholt notified CIC of the loss. Shortly thereafter, Thermo Treaters' landlord began to demand that Wineholt remove the shells of the Equipment from the former Thermo Treaters site or pay the landlord for storing them on the premises. In addition, because the Thermo Treaters site was contaminated, the Michigan Department of Environmental Quality began to demand that Wineholt remove the Equipment to allow for commencement of clean up of the site. Wineholt, through his counsel, attempted to get CIC to inspect the Equipment while it was still on the premises. Wineholt has presented evidence showing that Mike Swiat, a Claims Specialist for CIC, inspected and videotaped the Equipment at the Thermo Treaters site. (Wineholt Aff. ¶ 14; Bednar Aff. ¶ 11, attached to Pl.'s Resp. Br; Letter from Vincent to Swiat of 6/21/99, Pl.'s Resp. Br. Ex 14; Pl.'s Resp. Br. at 4.) CIC does not dispute this evidence. Eventually, Wineholt had the Equipment removed at his own cost. The salvage value of the Equipment was roughly equal to the cost of removal.

CIC responded to the claim by notifying Wineholt that it would investigate the claim under a reservation of rights, specifically noting that Thermo Treaters had cancelled the policy effective February 12, 1999, prior to the date of the loss. CIC also discovered that Wineholt was added to the Policy as an additional insured under the commercial general liability coverage rather than as a loss payee in the first-party coverage under the Commercial Property Coverage section, as should have been done to properly protect Wineholt's interest in the Equipment. On or about March 21, 2000, CIC determined that the Policy should be reformed to include Wineholt as a loss payee effective December 13, 1998. (Letter from Mulligan to Vincent of 3/21/00, Def.'s Br. Supp. Ex. M.) However, because there were still unresolved issues regarding whether the loss was covered under the Policy, CIC requested additional information from Wineholt. (*Id.*) On April 13, 2000, the parties held a meeting, at

which Wineholt presented a compilation of various documents to CIC to support his claim. (Def.'s Br. Supp. Ex. O.) Subsequent to the meeting, CIC's counsel wrote to Wineholt's counsel indicating that some issues remained open, such as the amount being claimed for each of the 22 items of Equipment identified in Wineholt's compilation of documents and the failure of the principals of Thermo Treaters to cooperate in CIC's investigation (this was an issue because an insured's failure to cooperate is a defense to coverage under the Policy also applicable to a loss payee, such as Wineholt). (Letter from Mulligan to Vincent of 5/15/00, Def.'s Br. Supp. Ex. Q.)

On July 27, 2000, CIC, through its counsel and pursuant to the Policy, sent Wineholt a sworn proof of loss form to complete and return to CIC within 60 days. Wineholt was asked to provide the following information about the loss: (i) time and origin; (ii) occupancy; (iii) title and interest (in the Equipment); (iv) changes in the information in paragraphs (ii) and (iii) since the Policy was issued; (v) total insurance available; (vi) actual cash value of the Equipment; (vii) the amount of the entire loss; and (viii) the amount of the claim. (Letter from Mulligan to Wineholt of 7/27/00, Def.'s Br. Supp. Ex. S.) On September 7, 2000, Wineholt submitted his signed proof of loss to CIC. (Def.'s Br. Supp. Ex. U.) On October 11, 2000, CIC, through its counsel, wrote to Wineholt, notifying him that the proof of loss was rejected because it did not meet the Policy's requirements. CIC gave Wineholt an additional 60 days within which to provide the required information requested and also offered to provide Wineholt assistance in completing the proof of loss form. Wineholt did not file a new proof of loss form within the additional 60–day period. Instead, Wineholt filed this action on December 28, 2000.

### Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992)(quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### Discussion

The issue presented in the instant motion is whether Wineholt's submission of a proof of loss containing less than all the requested information and his failure to comply with CIC's request to submit a new proof of loss precludes Wineholt from maintaining suit against CIC to recover under the Policy. CIC asserts that it is entitled to summary judgment based upon Wineholt's failure to submit a proof of loss containing all the required information. Wineholt asserts that summary judgment should be denied because he substantially complied with the Policy's requirements by providing CIC with all the information he had to substantiate his claim.

 Michigan courts apply basic rules of contract interpretation to determine whether coverage exists under insurance policies. An insurance contract must be

read as a whole and meaning given to all terms. *Auto–Owners Ins. Co. v. Churchman*, 440 Mich. 560, 566, 489 N.W.2d 431, 434 (1992); *South Macomb Disposal Auth. v. Am. Ins. Co.*, 225 Mich.App. 635, 653, 572 N.W.2d 686, 695 (1997). The language of the contract is to be given its ordinary, plain meaning and technical, constrained constructions should be avoided. *Bianchi v. Auto. Club of Mich.*, 437 Mich. 65, 71 n. 1, 467 N.W.2d 17, 20 n. 1 (1991); *Royce v. Citizens Ins. Co.*, 219 Mich.App. 537, 542, 557 N.W.2d 144, 147 (1996). Ambiguities in the policy are construed against the insurer, who is the drafter of the contract. *State Farm Mut. Auto. Ins. Co. v Enter. Leasing Co.*, 452 Mich. 25, 38, 549 N.W.2d 345, 351 (1996). An insurance policy must be enforced in accordance with its terms. *Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 207, 476 N.W.2d 392, 397 (1991).

■ An insured's failure to file a proof of loss within the time provided under the insurance policy will preclude coverage. *See Reynolds v. Allstate Ins. Co.*, 123 Mich.App. 488, 490–91, 332 N.W.2d 583, 584 (1983). Furthermore, in contrast to a notice of loss, an insurance company is not required to show prejudice when the insured fails to file a signed and sworn proof of loss within the time set forth in the policy. *Dellar v. Frankenmuth Mut. Ins. Co.*, 173 Mich.App. 138, 144–45, 433 N.W.2d 380, 382–83 (1988). In *Barnes v. State Farm Fire and Casualty Co.*, 623 F.Supp. 538 (E.D.Mich.1985), a case cited by both parties, the court summarized the purposes of a sworn proof of loss as follows:

The policy behind requiring a proof of loss is "to allow the insurer to form an intelligent estimate of its rights and liabilities, to afford it an opportunity for investigation, and to prevent fraud and imposition upon it." 44 Am.Jur.2d at § 1323, citing *Wehner v. Foster*, 331 Mich. 113, 49 N.W.2d 87 (1951); *Wisconsin Michigan Power Co. v. General Casualty & Surety Co.*, 252 Mich. 331, 233 N.W. 333 (1930). Notice is not the only purpose, however. One purpose of the proof of loss is to obtain a statement of the loss from the insured under oath such as will subsequently bind the insured and protect against the imposition of fraud.

*Id.* at 540. In *Barnes*, the court held that one of the insureds (the wife) did not "substantially comply" with the requirements of the insurance policy because she did not sign the proof of loss. The court noted that the proof of loss in that case failed to serve its purpose of binding the insured to a statement of the amount of loss because the husband's signature did not bind the wife. *Id.*

CIC contends that it is entitled to summary judgment pursuant to *Miles v. Iowa National Mutual Insurance Co.*, 690 S.W.2d 138 (Mo.Ct.App.1984). In that case, the court held that the plaintiff failed to demonstrate a right to recover under the policy because she failed to demonstrate that she fulfilled the policy's proof of loss requirement. The plaintiff's husband, the insured, submitted a proof of loss to the defendant insurance company. As in this case, the insurance company returned the proof of loss to the insured explaining the reasons for its rejection. After the plaintiff's husband died, and about a year after the insurance company returned the proof of loss, the plaintiff's attorney wrote to the insurance company asking for an explanation of the reasons for its rejection of the proof of loss. The company responded that because the plaintiff's deceased husband had made no reply to the letter returning the proof of loss and had made no attempt to submit a corrected proof of loss, the claim was rejected. The

court stated, "The only safe and fair course for an insurer to follow when presented with a defective proof of loss is promptly to return the proof of loss to the insured, advising the insured of its defects and insufficiencies and extending to the insured a reasonable time to cure the defects." *Id.* at 143. The court noted that "[i]n this case, the defendant insurance company did exactly that and nothing more or less." *Id.* CIC contends that it provided Wineholt detailed instructions and offered to provide assistance, just as the insurer did in *Miles.*

■ Wineholt counters that he has complied with the Policy because he has substantially performed its requirements. Before considering Wineholt's argument, however, the Court must address the issue raised by CIC of whether Michigan courts would recognize the doctrine of substantial performance in the context of a proof of loss. As a federal court sitting in diversity, this Court must apply the forum state's law in accordance with decisions from the state's supreme court. *Allstate Ins. Co. v. Thrifty Rent–A–Car Sys., Inc.,* 249 F.3d 450, 454 (6th Cir.2001). If the state supreme court has not addressed the issue, a court may look to other relevant data, including decisions from the state appellate courts, which should be disregarded only if the court is convinced that the state supreme court would rule otherwise. *Id.*

■ CIC cites two Michigan Supreme Court cases, *Fenton v. National Fire Insurance Co. of Hartford,* 235 Mich. 147, 209 N.W. 42 (1926), and *Peck v. National Liberty Insurance Co. of America,* 224 Mich. 385, 194 N.W. 973 (1923), as support for its argument that Michigan courts

would not recognize the rule of substantial performance (also referred to by some courts as "substantial compliance") in the context of proof of loss requirements. The Court finds nothing in either *Fenton* or *Peck* supporting the conclusion that the Michigan Supreme Court would not recognize the substantial compliance doctrine where the sufficiency of the content of a proof of loss is at issue. In *Fenton,* the plaintiff never submitted a proof of loss, and the only issue was whether the insurance company waived the proof of loss requirement. *See Fenton,* 235 Mich. at 150, 209 N.W. at 43. In *Peck,* the issue was whether the plaintiff's submission of a proof of loss outside of the sixty-day statutory period precluded suit by the insured.[1] *See Peck,* 224 Mich. at 386–87, 194 N.W. at 974. Thus, unlike this case, the insureds in those cases did not submit a proof of loss within the required time. Similarly, the Sixth Circuit's recent decision in *Neuser v. Hocker,* 246 F.3d 508 (6th Cir.2001), is not persuasive authority on the issue before the Court because the insured also did not file a proof of loss within the required sixty-day period, and perhaps more importantly, the court in that case was not applying Michigan law. *See Neuser,* 246 F.3d at 509–11. On the other hand, the Michigan Court of Appeals has applied the rule of substantial performance in determining whether an insured complied with his obligation to cooperate with the insurer by submitting to an examination under oath. *See Gibson v. Group Ins. Co.,* 142 Mich.App. 271, 275–76, 369 N.W.2d 484, 486 (1985)(per curiam). And, the Michigan Supreme Court has applied the substantial performance rule in the context of a notice. *See Reed v. Loyal*

---

1. It has been observed that "the substantial compliance rule ordinarily applies to the content or other substantive aspect of the notice or proof since time requirements, by their very nature, do not lend themselves well to a 'substantial compliance' rule." Lee R. Russ & Thomas F. Segalla, 13 *Couch on Insurance* 3d § 186:35 (1999). This distinction explains why the issue of substantial compliance would not arise in *Fenton* and *Peck.*

*Protective Ass'n,* 154 Mich. 161, 175, 117 N.W. 600, 605 (1908). Although no Michigan court has applied the rule of substantial performance to test the sufficiency of a proof of loss, the prevailing view is that an insured need only substantially comply with a policy's proof of loss provisions. Lee R. Russ & Thomas F. Segalla, 13 *Couch on Insurance* 3d § 186:33 (1999). Moreover, at least two judges in the Eastern District of Michigan have applied the rule of substantial performance with regard to proofs of loss. *See Barnes,* 623 F.Supp. at 540; *Rich v. Allstate Ins. Co.,* No. 86–CV–73319–DT, 1987 U.S. Dist. LEXIS 15695, at *4–7 (E.D. Mich. June 23, 1987)(applying rule of substantial compliance to former proof of loss statute). Based upon these cases, this Court believes that the Michigan Supreme Court would likely apply the rule of substantial compliance to cases involving the sufficiency of a proof of loss as it has in other contexts involving insurance policies. Furthermore, there is no material difference between a notice of loss and a proof of loss that would require a different application of the substantial compliance rule to a proof of loss.[2]

Having determined that the rule of substantial performance applies to the proof of loss filed by Wineholt, the Court must determine whether the proof of loss substantially complied with the Policy's requirements. Substantial performance has been described as follows:

"A contract is substantially performed when all the essentials necessary to the full accomplishment of the purposes for which the thing contracted has [sic] been performed with such approximation that a party obtains substantially what is called for by the contract."

\* \* \*

"Generally speaking, deviations from the absolute terms of a contract do not necessarily cause a failure of performance, but may entitle a party to extra compensation or damages. Imperfections in the matters of details which do not constitute a deviation from the general plan do not prevent the performance from being regarded as substantial performance. On the other hand, where the deviations or alterations are such as would essentially change the terms of performance, they will be considered as a failure of performance."

*Gibson,* 142 Mich.App. at 275–76, 369 N.W.2d at 486 (quoting 6A *Michigan Law & Practice Contracts* § 314, pp. 315–16 (footnotes omitted)). Furthermore:

Substantial compliance in the context of a proof of loss provision generally means that the insured has supplied sufficient information to allow the insurer to investigate the insured's claim, estimate its rights and liabilities, and prevent fraud and unjust claims from being asserted, or, alternatively, that the insured has complied to the extent to which compliance is possible, in circumstances such as where proofs and documentation not supplied have been destroyed or otherwise made unavailable by reasons beyond the power of the insured.

---

**2.** CIC attempts to create a distinction between a notice of loss and a proof of loss by pointing out that an insurer must show prejudice in order to raise notice as a defense, while an insured's failure to file a proof of loss within the prescribed time usually results in denial of recovery even in the absence of prejudice to the insurer. However, the prejudice requirement is imposed for notices of loss because insurance policies generally do not contain specific time limits for submitting a notice of loss, while sixty days is the period of time generally allowed for filing proofs of loss. *See Dellar,* 173 Mich.App. at 144–45, 433 N.W.2d at 382–83.

*Couch on Insurance* 3d § 186:36 (footnotes omitted).

In *Allstate Insurance Co. v. Charity,* 255 Va. 55, 496 S.E.2d 430 (1998), the Virginia Supreme Court held that the insured substantially complied with the requirements of a fire insurance policy by submitting an initial proof of loss which stated "to be determined" in the blanks for the actual cash value and the amount claimed under the policy. More than thirty days after submitting the initial proof of loss, the insured submitted a second proof of loss containing the dollar amount for the cash value of the structure. Shortly after receipt of the second proof of loss, the insurer gave notice of its exercise of its right to rebuild the structure, which it was required to exercise within thirty days after receipt of the proof of loss. The insured argued that the insurer did not timely exercise its right to rebuild because the insurer exercised the right more than thirty days after receipt of the initial proof of loss. The insurer argued that its exercise of its right to rebuild the structure was timely because the first proof of loss was insufficient to trigger the thirty-day period. In determining the sufficiency of the first proof of loss, the court examined whether the information in the proof of loss enabled the insurer to investigate the loss, estimate its rights and liabilities, and prevent a fraudulent or unjust claim. *Id.* at 59, 496 S.E.2d at 431–32. The insurer admitted that the information in the proof of loss allowed it to investigate the claim but argued that the absence of the dollar amount of the loss prevented it from determining the nature and extent of its liability. The court rejected the argument, stating:

> Having an insured's estimate of its loss undoubtedly would assist the insurer in structuring its position in settlement of the claim. But the extent of Allstate's liability is determined by the loss itself, the policy's coverage restrictions, and the limits of the policy, not by the dollar amount the insured places on the proof of loss form. Not knowing the dollar amount of the insured's claim does not affect the ability of the insurance company to determine the amount of its liability.

*Id.* at 59, 496 S.E.2d at 432 (footnote omitted).

The circumstances of the loss in *Hartford Fire Insurance Co. v. Himelfarb,* 355 Md. 671, 736 A.2d 295 (1999), were somewhat analogous to those in this case. The insureds ("Himelfarbs") in *Himelfarb* held a security interest in certain equipment used by a manufacturing company. Unlike Wineholt, the Himelfarbs obtained their own commercial insurance policy on the equipment. Eventually, the manufacturing company filed bankruptcy. Around that time, the Himelfarbs' attorney inventoried the equipment. A few months later a break-in occurred and some of the equipment was stolen. The Himelfarbs reported the theft to the insurance company and retained an adjuster. The Himelfarbs signed and submitted a proof of loss to the insurance company within sixty days as required by the policy. The letter from the adjuster enclosing the proof of loss notified the insurer that the Himelfarbs reserved the right to file an amended proof of loss at a later date. The spaces for full cost of replacement and actual cash value contained the words "to be determined." After receiving the proof of loss, counsel for the insurer notified the adjuster by letter that the proof did not comply with the requirements of the policy and gave the Himelfarbs additional time to submit further information. The Himelfarbs' adjuster responded that all information had been provided independent of the proof. According to the adjuster, the extent of the loss could not be deter-

mined without the list of items sold at the bankruptcy trustee's auction for comparison against the prior inventory to determine what items had been stolen. Shortly after the bankruptcy auction, the Himelfarbs' adjuster submitted a report to the insurer listing the equipment and other items and the replacement cost of those items. When the Himelfarbs sued to recover under the policy, the insurer defended on the ground that the Himelfarbs did not comply with the proof of loss requirement. After reviewing Maryland law on substantial compliance with regard to proofs of loss, the court held that substantial performance may be found where "(1) the insured has furnished the insurer with information reasonably requested by the insurer to the extent that it is reasonably possible for the insured to do so, and (2) the insured expressly or impliedly promises to submit, when and as it is reasonably possible for the insured to do so, the balance of the information." *Id.* at 690–92, 736 A.2d at 306. The court concluded that on the facts before it the insurer was not entitled to summary judgment because the Himelfarbs could show that they substantially complied with the requirements of the proof of loss by submitting all of the information reasonably within their possession and promising to furnish the remainder of the information as they obtained it. *Id.* at 691, 736 A.2d at 306–07.

In a recent unreported case, *Lewis v. State Farm Fire and Casualty Co.*, 2000 WL 1828711, 238 F.3d 422 (6th Cir. Dec. 5, 2000), the Sixth Circuit, applying Kentucky law, held that the plaintiffs did not comply with the sworn proof of loss requirements. The plaintiffs made a claim under a fire insurance policy after their home was completely destroyed by fire. The proof of loss form which the plaintiffs submitted requested much of the same information requested on CIC's proof of loss form in this case. The court held that the plain-

tiffs failed to demonstrate substantial compliance because the proof of loss was not notarized, did not include the effective dates of their policy or the maximum amount of the supplemental claim, did not indicate that the loss was due to fire, and the plaintiffs did not attach an inventory of the personal property lost in the fire or an estimate of its value. *Id.* at *4. The court observed that these were not "picky" details. *Id.* In addition, the court rejected the plaintiffs' assertion that a videotape and transcript they submitted to the insurer constituted substantial compliance with the proof of loss requirements because the plaintiffs did not submit those items to the district court and they were unsworn. *Id.*

Wineholt cites *Rich v. Allstate Insurance Co.*, No. 86–CV–73319–DT, 1987 U.S. Dist. LEXIS 15695 (E.D. Mich. June 23, 1987), as support for his claim of substantial compliance. CIC contends that a comparison of this case to the facts of *Rich* shows that Wineholt did not substantially comply. In *Rich*, the plaintiff's house was damaged by fire. The plaintiff filed a proof of loss with the insurer which answered every question except those regarding the total replacement cost and the actual cash value of the property. The plaintiff responded, "undetermined," to these questions. In addition, the plaintiff attached to her response to the insurer's motion for summary judgment a letter to the insurer from the plaintiff's adjuster itemizing the property lost in the fire and assigning an actual cash value to that property. The court held that the plaintiff substantially complied with the proof of loss requirement, stating, "[f]or summary judgment purposes, it is clear that Plaintiff could be unable to determine the total replacement cost and the actual cash value of the goods lost in the fire" and that "Plaintiff has subsequently filed a form estimating actual cash value." *Id.* at *6.

The court distinguished an unreported case from the Eastern District of Michigan, *Livernois McGraw Associates, Inc. v. First State Insurance Co.* In *Livernois McGraw*, the proof of loss submitted by the insured did not contain the date of loss, the actual cash value, the amount of the loss, or the amount claimed under the policy. The court in that case observed that the proof of loss was nothing more than a piece of paper. *Rich* at *5. The court in *Rich* found the plaintiff's proof of loss to be "more than a piece of paper" because it informed the insurer of the date of loss, the total insurance that covered the property, the amount claimed, and the plaintiff later provided the actual cash value of the property. *Id.* at *7.

Wineholt contends that this case is similar to *Rich* because Wineholt provided CIC with a sworn proof of loss that included the cash value of the Equipment, the status of Wineholt's ownership interest, and an explanation of the circumstances. In addition, Wineholt points out that he provided CIC a large number of documents to assist CIC in evaluating Wineholt's claim. CIC, in contrast, contends that Wineholt's proof of loss presents a far less persuasive case for applying the substantial compliance rule than the proof of loss in *Rich* because Wineholt: (1) failed to identify the specific amount he was claiming, as well as the whole loss and damage and applicable deductible; (2) failed to provide the basis for his estimate of actual cash value; (3) failed to provide documentation of his interest in the Equipment; (4) failed to provide any information on the occupancy of the premises where the loss occurred; (5) listed the cause of the loss as "unknown"; (6) listed the date of loss as May 12 rather than April 12; (7) indicated that CIC insured the Equipment against loss caused by Thermo Treaters, which, if true, would preclude coverage under the Policy; (8) failed to provide estimates, in-

ventories, receipts, expert reports, or other documents; and (9) failed to provide the amount being claimed with respect to each item listed and failed to provide an explanation of how the documents furnished in the April 2000 meeting supported the amount claimed for each item.

■■■ In this Court's view, the proper inquiry in determining substantial compliance in this case is whether the proof of loss fulfilled its three intended purposes: (1) allowing the insurer an opportunity to investigate the loss; (2) allowing the insurer to estimate its rights and liabilities; and (3) preventing fraud. *Barnes*, 623 F.Supp. at 540. At the same time, substantial compliance requires more than a minimal effort. The insured should make a reasonable effort to provide information reasonably within its possession and with a sufficient degree of particularity to allow the insurer to make an informed review of the claim. *Himelfarb*, 355 Md. at 690, 736 A.2d at 306. Thus, submitting a "piece of paper" with a signature and little or no information is not substantial compliance. *See Rich*, 1987 U.S. Dist. LEXIS 15696, at *7.

■■■ With these principles in mind, the Court concludes that Wineholt's proof of loss was sufficient to afford CIC an opportunity to investigate the claim. Wineholt notified CIC of the loss well over a year before CIC requested him to submit a proof of loss. During that time, Wineholt provided documentation of the loss to CIC showing the items that were damaged as well as Wineholt's interest as the lessor of the Equipment. In addition, although the Equipment was subsequently removed and scrapped, Wineholt provided CIC access to the Equipment and, in fact, CIC's adjuster examined the Equipment and even videotaped it in place and in its damaged state. While Wineholt's proof of loss was incom-

plete and inaccurate with regard to some details, CIC had sufficient information in its possession either to determine the answers to some of those questions or to conclude that they could not be answered. For example, with regard to occupancy, CIC knew that Wineholt first entered the Thermo Treaters premises after the loss occurred and after Thermo Treaters had vacated the premises. Thus, any answer by Wineholt other than "unknown" would have been based upon pure speculation and essentially useless to CIC in its investigation. Similarly, with regard to the date of loss, CIC should have known from information in its files that Wineholt discovered the loss on April 12 rather than May 12. (Letter from Swiat to Wineholt of 6/15/99, Pl.'s Resp. Br. Ex. 13.)

The Court reaches a different conclusion with regard to the purposes of preventing fraudulent claims and allowing the insurer to estimate its rights and liabilities. In particular, Wineholt failed to state the whole loss and damage, the amount of the deductible, and the amount claimed. It is true that Wineholt filled in the actual cash value of the Equipment. However, it is fairly obvious that Wineholt did not make a good faith effort to determine the actual cash value of the Equipment, but rather simply filled in the actual cash value with an amount equal to the Policy limits. Unlike the plaintiffs in *Rich, Charity,* and *Himelfarb,* Wineholt did not indicate in the proof of loss, nor has he asserted in this proceeding, that he was unable to at least estimate the actual cash value, the whole loss and damage, or the amount claimed. The record shows that Wineholt possessed invoices, cancelled checks, and other documents from which he could have at least prepared a good faith estimate of those figures. Although Wineholt provided those documents to CIC, after reviewing those documents this Court determines that no one, other than someone such as Wineholt with first-hand knowledge of how the documents relate to the Equipment, could determine the value of the Equipment or the amount of Wineholt's claim from those documents. Wineholt's failure to provide specific information, especially in light of CIC's request for a new proof of loss containing that information, makes the proof of loss in this case closer to the proof of loss in *Livernois McGraw* rather than the proof of loss in *Rich.* Even though an insurer may obtain information from an insured through other means, such as an examination under oath, this Court believes that the missing information, especially the actual cash value and the amount claimed under the Policy, may be of significant assistance to an insurer in estimating its rights and liabilities. Furthermore, Wineholt's proof of loss would not serve to prevent a fraudulent claim because without specific figures, there is nothing "sworn to." Thus, the Court concludes that the proof of loss submitted by Wineholt did not substantially comply with the Policy's requirements.

■ An important issue not addressed by the parties is whether Wineholt's failure to comply with a condition to bringing suit requires dismissal with or without prejudice. In *Yeo v. State Farm Insurance Co.,* 219 Mich.App. 254, 555 N.W.2d 893 (1996), the Michigan Court of Appeals held that the insured's failure to comply with a condition precedent to filing a lawsuit against an insurer—in that case, submitting to an examination under oath—"is not an absolute bar to recovery, but acts to suspend the right to recovery until the examination is held." *Yeo,* 219 Mich.App. at 258, 555 N.W.2d at 895. Therefore, the court concluded that where the insured fails to comply with a condition precedent, dismissal without prejudice is generally the correct procedure. *Id.* The court observed:

Dismissal without prejudice, which would allow a plaintiff to submit to an examination under oath and then refile the action, is equitable and protects the interests of both parties. The plaintiff will have the opportunity to seek her insurance benefits, while the defendant will still have the opportunity to examine the plaintiff, under oath, to determine if it will defend or adjust the claim.

*Id.* at 258–59, 555 N.W.2d at 895.

The language of the Policy cited by CIC in support of dismissal is very similar to the language of the policy in *Yeo* which the court found to create a condition precedent. In fact, under the Policy, an insured's obligation to provide a sworn proof of loss and submit to an examination under oath are both located under the "Loss Conditions" section of the personal property coverage form. (Policy, FM 101 01 92 at 7–8.) For purposes of a dismissal for failure to comply with the proof of loss requirement, the Court finds no distinction between an examination under oath and a proof of loss precluding a dismissal without prejudice to allow the insured an opportunity to seek insurance coverage and the insurer an opportunity to obtain a more complete proof of loss form. In addition, there is no evidence of "wilful noncompliance" by Wineholt that would require dismissal with prejudice. *See Cruz v. State Farm Mut. Auto. Ins. Co.*, 241 Mich.App. 159, 169–70, 614 N.W.2d 689, 695 (2000). Therefore, as a matter of equity, the Court will dismiss Wineholt's complaint without prejudice to allow Wineholt to comply with the proof of loss requirement.[3] Wineholt will be required to submit a supplemental proof of loss to CIC using the same form provided by CIC within (60) days from the date of the Order dismissing the complaint. The proof of loss must contain accurate and complete information to the extent that Wineholt is capable of providing it. Wineholt's failure to do so will bar his claim.

### Conclusion

For the foregoing reasons, the Court will grant CIC's motion for summary judgment and dismiss Wineholt's complaint without prejudice.

### ORDER

In accordance with the Opinion filed this date,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (docket no. 4) is **GRANTED IN PART.** This case is **DISMISSED WITHOUT PREJUDICE** to allow Plaintiff sixty (60) days to submit a supplemental sworn proof of loss to Defendant containing, in addition to other requested information, a good faith estimate of the actual cash value, the whole loss and damage, and the amount claimed under the Policy. Plaintiff's failure to provide a supplemental sworn proof of loss to Defendant within that time or to provide the specified information shall bar Plaintiff's claim.

This case is closed.

---

**3.** Following oral argument, the Court gave the parties the opportunity to permit Wineholt to submit a supplemental proof of loss. One or both of the parties rejected that alternative, which is essentially no different from the Court's resolution of the motion.