RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0104P (6th Cir.)
File Name: 01a0104p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

RICHARD A. NEUSER,
　　　　　　　　　*Plaintiff,*

　　　　v.

NANCY S. HOCKER; HOCKER-
FRICK AGENCY, INC., a
Michigan Corporation,
　　　　*Defendants/Third Party*
　　　　*Plaintiffs-Appellants,*

AUTO OWNERS INSURANCE
COMPANY,
　　　　　　*Third Party*
　　　*Defendant-Appellee.*

No. 99-1999

Appeal from the United States District Court
for the Western District of Michigan at Kalamazoo.
No. 98-00104—Hugh W. Brenneman, Jr.,
Magistrate Judge.

Argued: September 14, 2000

Decided and Filed: February 14, 2001[*]

Before: NELSON and MOORE, Circuit Judges;
WILHOIT, District Judge.[**]

———————

**COUNSEL**

———————

**ARGUED:** William R. Bates, YORK, TIDERINGTON & MILLER, Kalamazoo, Michigan, for Appellant. Gerald J. Nielsen, NIELSEN LAW FIRM, Metairie, Louisiana, for Appellee. **ON BRIEF:** Michael J. Miller, YORK, TIDERINGTON & MILLER, Kalamazoo, Michigan, for Appellant. Gerald J. Nielsen, NIELSEN LAW FIRM, Metairie, Louisiana, for Appellee.

———————

**OPINION**

———————

DAVID A. NELSON, Circuit Judge. Richard Neuser's house fell into Lake Michigan after the bluff on which it sat eroded away. Mr. Neuser had purchased a flood and erosion insurance policy issued pursuant to the National Flood Insurance Act, 42 U.S.C. §§ 4001 *et seq.*, but he failed to file a claim under the policy within the required 60-day period. After his claim was barred, Mr. Neuser sued his insurance agent, defendant Hocker-Frick Agency, on a negligence theory. The agency then joined the issuer of the policy, Auto Owners Insurance Company, as a third-party defendant. The gravamen of the third-party complaint was that Auto Owners

———————

[*] This decision was originally issued as an "unpublished decision" filed on February 14, 2001. On April 3, 2001, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable Henry R. Wilhoit, Jr., United States District Judge for the Eastern District of Kentucky, sitting by designation.

house. Mr. Neuser testified repeatedly that he had no intention of filing a claim unless and until his house was destroyed – he preferred to "ride it out." The repeal of Upton-Jones thus cannot have had any effect on Mr. Neuser's prospects for recovery under the Upton Jones Amendment.[3]

Mr. Neuser might or might not have been able to prevail on a timely claim under the National Flood Insurance Act *sans* Upton-Jones (Auto Owners suggests the existence of defenses that need not concern us here), but it is clear that the claim he submitted seven months after the loss of the house was not timely. See 44 C.F.R. Pt. 61, App. A(1), art. 9(J). The district court noted that it is "undisputed that plaintiff failed to comply with the requirement in this instance," and, as we have seen, federal courts have consistently held that the proof of loss requirement is to be strictly enforced. As the 9th Circuit declared in *Flick*, for example, "a claimant under a standard flood insurance policy may not avoid strict enforcement of the 60 day sworn proof of loss requirement, except through a valid waiver by the Federal Insurance Administrator." *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d at 391-92. We agree. Accordingly, and because Auto Owners was not shown to have been responsible for the failure to comply with the 60-day requirement, the judgment entered against Hocker-Frick is **AFFIRMED**.

———————

[3] As the pleadings make clear, both Mr. Neuser and Hocker-Frick alleged that Auto Owners' negligence consisted of failure to advise of the repeal of Upton-Jones. *Cf. Neuser* at 11, 25. On appeal, however, Hocker-Frick presents an additional or alternative claim: that Auto Owners was negligent in failing to advise that the repeal of Upton-Jones did not eliminate flood coverage altogether. As a result of such negligence, it is now suggested, Hocker-Frick and Mr. Neuser mistakenly thought that all insurance coverage had been eliminated. This claim was not presented to the district court, and we do not consider it here.

*Berger v. Pierce*, No. 91-3892, 1992 WL 393595 (6th Cir. 1992) (holding that the FEMA could not use 1973 as the benchmark year for determining all questions of whether a "flood" existed). Auto Owners nevertheless refused to pay the claim because Mr. Neuser had failed to file within 60 days of the house falling in the lake. Hocker-Frick does not deny that Mr. Neuser failed to file on time, but the agency contends that this failure was caused by Auto Owners' own failure to inform Hocker-Frick and Mr. Neuser of the repeal of Upton Jones.

Mr. Neuser originally sued Hocker-Frick in a Michigan state court. When Hocker-Frick filed its third-party complaint against Auto Owners, the latter company removed the case to the United States District Court for the Western District of Michigan on federal question grounds. The district court ultimately entered summary judgment in favor of Auto Owners, and this appeal followed.

## II

Hocker-Frick continues to maintain, as it did before the district court, that Auto Owners should be held liable for negligence in failing to inform Hocker-Frick and Mr. Neuser of the repeal of Upton Jones. In this connection Hocker-Frick points to several letters from Auto Owners providing updates on policy changes. The agency further notes that Auto Owners conducted periodic seminars about the Flood Act. The contention is that these practices created a "duty to educate Appellants about the Flood Act and changes thereto." The breach of the alleged duty is said to have resulted in Mr. Neuser's failing to file an Upton Jones claim.

One problem with this line of reasoning is that even if Auto Owners had a duty to advise of the repeal of the Upton Jones amendment (a question we need not reach), failure to discharge such a duty could not have caused Hocker-Frick's alleged injury. The record makes it abundantly clear that Mr. Neuser never intended to file a claim under Upton-Jones. As discussed above, Upton-Jones simply extended erosion coverage to claims filed *before* the actual destruction of the

had been guilty of negligence in failing to tell Hocker-Frick about the repeal of a certain amendment to the National Flood Insurance Act. Neuser's claim against Hocker-Frick was ultimately settled, and the district court entered summary judgment in favor of Auto Owners on the third-party claim. *Neuser v. Hocker*, No. 4:98-CV-104 (W.D. Mich., Jul. 22, 1999) (hereinafter cited as "*Neuser*"). Hocker-Frick has appealed. Upon *de novo* review, and for the reasons set forth below, we shall affirm the challenged judgment.

## I

### A.   *The National Flood Insurance Program*

With the passage in 1968 of the National Flood Insurance Act, 42 U.S.C. §§ 4001 *et seq.*, Congress established the National Flood Insurance Program. Under this program homeowners can buy "Standard Flood Insurance Policies" that promise indemnification for damage caused by flood or rising waters.[1] In 1973, Congress expanded flood protection (via the Flood Disaster Protection Act, 42 U.S.C. § 4121) to include any "collapse or subsidence of land along the shore of a lake or other body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels." 42 U.S.C. § 4121(c).

### B.   *Upton-Jones Amendment*

Congress expanded erosion insurance protection again in 1987 with the enactment of the Upton-Jones Amendment, Pub. L. No. 100-242, § 544, 101 Stat. 1815, 1940-42 (codified at 42 U.S.C. § 4013(c) (now repealed)). The effect of Upton-Jones was that homeowners were no longer required to wait for their houses to be destroyed by erosion, but could present claims and be recompensed beforehand if the occurrence of such damage was imminent. Payment under Upton-Jones was subject to three conditions: (1) the house

---

[1] The Standard Flood Insurance Policy is set out at 44 C.F.R. Pt. 61, App. A(1).

had to be covered by flood insurance; (2) the house had to be located on the shore of some body of water; and (3) the house had to have been certified by a designated state or local authority as "subject to imminent collapse or subsidence as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels."  42 U.S.C. § 4013(c) (quoted in *Neuser* at 7).  As the district court noted, "The only difference between the erosion coverage already provided and that provided by [Upton-Jones] appears to be the timing and, therefore, possibly the amount of the payment."  *Neuser* at 8.  Upton-Jones was repealed on September 23, 1994,[2] and all claims thereunder had to be filed by September 23, 1995.

C.  *The "Write Your Own" Program*

The Flood Insurance Administration, a component of the Federal Emergency Management Administration ("FEMA"), administers the National Flood Insurance Program pursuant to the authority granted by 42 U.S.C. § 4081(a).  FEMA created the "Write Your Own" program in 1983.  44 C.F.R. §§ 62.23-.24.  Under this program, private insurance companies, such as Auto Owners, issue Standard Policies as fiscal agents of the government.  44 C.F.R. § 62.23.  FEMA has the sole authority to prescribe the terms and conditions of the Standard Policy, and the Standard Policy must be issued without alteration (except by the written consent of the Federal Insurance Administrator).  44 C.F.R. §§ 61.4(b), 61.13(d), 62.23(c), 62.23(d).  Auto Owners is a participant in the Write-Your-Own program, and the policy Mr. Neuser bought was a Standard Policy incorporating all of the standard provisions.

If payment is to be made on an insurance claim brought under a Standard Policy, the claimant must file a proof of loss form within 60 days of the loss.  See 44 C.F.R. Pt. 61, App.

---

[2] The repeal was part of the Riegle Community Development and Regulatory Improvement Act of 1994, Pub. L. No. 103-325, Sec. 552(a) (Sept. 23, 1994) (striking subsection (c) from 42 U.S.C. § 4013).

A(1), art. 9(J).  Our sister circuits have consistently held that the proof of loss requirement is to be strictly enforced.  See *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 391 (9th Cir. 2000); *Gowland v. Aetna*, 143 F.3d 951 (5th Cir. 1998); *Oppenheim v. Director Federal Emergency Management Agency*, No. 86-6357, 1988 WL 69785 (9th Cir. 1988); *Phelps v. Federal Emergency Management Agency*, 785 F.2d 13 (1st Cir. 1986); *West Augusta Development Corp. v. Giuffrida*, 717 F.2d 139 (4th Cir. 1983).

D.  *This Case*

It was 1989 when Mr. Neuser bought his lakeside property.  At that time the edge of the bluff was between 60 and 75 feet from the house itself.  By 1993 the bluff had eroded to within three feet of the building, and the structure was beginning to twist and crack.  Although friends, neighbors, and his insurance agent urged Mr. Neuser to move out, he chose to stay.  To quote Mr. Neuser's trial testimony:

"I simply elected to ride the thing out as far as I could push it . . . ."

"I can remember thinking, because I didn't want the thing condemned.  I deliberately was riding this thing to the max."

Mr. Neuser also testified that he intended to "keep the insurance on it and not file a claim 'til I absolutely had to."

Mr. Neuser did not vacate the house until part of it fell into Lake Michigan in the middle of the night on March 16, 1997.  At that point, under the terms of the Standard Policy, Neuser had 60 days to file a claim with Auto Owners.  He did not submit a claim until October of 1997, however, five months after the filing deadline.  Auto Owners then informed Mr. Neuser that the FEMA would accept claims only if the lake levels during 1997 exceeded those during 1973 (the regulatory definition of a "flood"), and that because the 1997 levels were not at flood-level, there would be no coverage.  This statement of the law turned out to be incorrect.  See