Catherine **HOWELL**, et al., **Plaintiffs**

v.

**STATE FARM INSURANCE COMPANIES, et al., Defendants.**

Civil No. BEL–04–1494.

United States District Court, D. Maryland.

March 26, 2008.

16. The reply brief was considered by the Court and shall be deemed filed.

Donna F Solen, Victoria S. Nugent, Douglas J. Mcnamara, Whitney R. Case, Andrew N. Friedman, Cohen Milstein

Hausfeld and Toll PLLC, Washington, DC, Lee S. Shalov, Shalov Stone and Bonner LLP, New York, NY, for Plaintiffs.

Gerald Joseph Nielsen, Nielsen Law Firm LLC, Metairie, LA, John M. Wood, Stephen Todd Fowler, Reed Smith LLP, Falls Church, VA, Steuart H. Thomsen, Sutherland Asbill and Brennan LLP, Kirk Robert Ruthenberg, Sonnenschein Nath and Rosenthal LLP, Washington, DC, Lee H. Ogburn, Steven Michael Klepper, Kramon and Graham PA, Baltimore, MD, Craig Russell Blackman, Samuel J. Arena, Jr, Stradley Ronon Stevens and Young LLP, Philadelphia, PA, Nicole S. Pakkala, Robert H King, Jr, Sonnenschein Nath and Rosenthal LLP, Chicago, IL, for Defendants.

## *MEMORANDUM*

BENSON EVERETT LEGG, Chief Judge.

This is a proposed class action by homeowners seeking benefits under Standard Flood Insurance Policies (SFIPs) issued by private insurers participating in the National Flood Insurance Program (NFIP). The plaintiffs are nine Maryland residents[1] whose homes were damaged by flooding during and immediately after Hurricane Isabel in September 2003. In the wake of the storm, the plaintiffs filed claims with their respective insurers to rehabilitate their homes. Each of their claims was ultimately settled for an amount below the policy limit, but in the full amount claimed. The plaintiffs now contend that the defendant insurance companies breached their contractual obligations by coercing or misleading them into filing proofs of loss that did not adequately reflect the true extent of the damage to their properties.[2]

1. The plaintiffs are Catherine Howell, Wayne Blackmon, Michael Rhea, Russlyn Dodson, Kathryn Smith, Frederick Kotrla, Henry Hale, Robert Valentin, and Al Garner.

2. Each plaintiff has sued only that company that issued his or her SFIP. *See* Pl.'s Consolidated Opp. to Def.'s Motion to Dismiss, Docket No. 43, at 42.

All nine defendants have moved for summary judgment. According to the defendants, the plaintiffs are barred from recovery because they failed to comply with a central and mandatory term of their policies. As a matter of federal law, the SFIP unconditionally requires a claimant to file a proof of loss within a specified time after the loss occurs, in this case 120 days. As we explain in greater detail below, the responsibility for filing a timely and complete proof of loss rests squarely with the insured. Private insurers participating in the NFIP have no authority to waive the proof of loss requirement or to pay an amount in excess of the amount claimed.

In this case, each of the plaintiffs submitted timely proofs of loss, which their insurers paid in full. Alleging misconduct in the handling of their claims, the plaintiffs now seek to recover additional damages under the terms of their SFIPs. This cannot be done. The deadline for filing proofs of loss has long-since passed, and the Court is without authority to excuse the plaintiffs' failure to comply with a central prerequisite for the disbursement of federal flood insurance benefits. Accordingly, the Court agrees that the insurers are entitled to judgment as a matter of law, and will therefore GRANT summary judgment in favor of defendants State Farm Insurance Company, Omaha Property & Casualty Corp., Indemnity Insurance Company of North America, Standard Fire Insurance Company,[3] USAA General Indemnity Corp., Harleysville Mutual Insurance Company, Allstate Insurance Company, Selective Insurance Company of the Southeast, and South Carolina Insurance Company.

## I. Background

### A. *The National Flood Insurance Program:*

 The NFIP is administered by the Federal Emergency Management Agency (FEMA) pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001–4029. Under the program, individuals may purchase flood insurance either directly from FEMA or from private insurance companies (referred as "Write–Your–Own" or "WYO" insurers) authorized by regulation to sell SFIPs under their own names. 44 C.F.R. Part 62.23–24. The terms and conditions of the SFIP are fixed by FEMA regulation and have the force and effect of federal law. 44 C.F.R.Part 61.4(b), 61.13(d)-(e), 62.23(c)-(d). Accordingly, "all flood insurance policies issued by WYO companies which participate in the [NFIP] must mirror the terms and conditions of the SFIP, which terms and conditions cannot be varied or waived other than by the express written consent of the Federal Insurance Administrator." *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 599 (4th Cir.2002). Payments on SFIP claims constitute a direct charge on the United States Treasury. 42 U.S.C. §§ 4017–18; *Battle*, 288 F.3d at 600.

The SFIP is a "single-risk" policy that provides coverage for "direct physical loss by or from flood." 44 C.F.R. Part 61, App.A(1) Art II(B)(12). Four types of coverage are available under the policy: (1) property coverage, also referred to as "Dwelling Coverage;" (2) personal property coverage, also referred to as "Contents Coverage;" (3) "Other Coverages," including debris removal, loss avoidance measures, and condominium loss assessments; and (4) "Increased Cost of Compliance Coverage," which provides up to $30,000[4]

---

**3.** Defendant Standard Fire Insurance Company was incorrectly designated in the first amended complaint as "Travelers' Property Casualty Corporation." Accordingly, Standard Fire has filed an unopposed motion

seeking to be substituted as the proper party to this lawsuit. The Court will GRANT the motion by separate order.

**4.** At the time the Plaintiffs' SFIPs were issued, the ICC coverage limit was $20,000.

for compliance with state and local floodplain management laws and ordinances. *Id.* Art. III.[5]

. To collect on a claim under the SFIP, a policyholder must comply with a number of procedural requirements, including the timely[6] submission of a proper "proof of loss." 44 C.F.R. Part 41, App.A(1) Art. VII.J. A proof of loss is "the [insured's] statement of the amount [he or she] is claiming under the policy, signed and sworn to by [the insured.]" *Id.* Pursuant to Article VII.J.4 of the SFIP, a proof of loss must provide, *inter alia,* a brief explanation of how the loss occurred, "specifications of [ ] damaged buildings and detailed repair estimates," and an inventory of damaged property. Although policyholders may be provided with the services of an adjuster in completing their proofs of loss, the SFIP expressly declares that "this is a matter of courtesy only," and that the insured bears the ultimate responsibility for complying with the terms and conditions of the SFIP.[7] *Id.* Art.VII.J.7.

A policyholder may not sue to recover money under the SFIP "unless [he or she has] complied with all of the requirements of the policy," including the proof of loss requirement described above. *Id.* Art. VII.R. All disputes arising from the handling of claims under the SFIP "are governed exclusively by the flood insurance regulations issued by FEMA, the National

Flood Insurance Act of 1968, and federal common law." *Id.* Art.IX. *See also Gallup v. Omaha Prop. & Cas. Ins. Co.,* 434 F.3d 341 (5th Cir.2005).

In the aftermath of Hurricane Isabel, FEMA made a number of adjustments to the terms and conditions of the SFIP. In a memorandum dated October 27, 2003, Anthony Lowe, then-director of FEMA's Mitigation Division, extended the period within which an insured must file a proof of loss from 60 to 120 days. Accordingly, policyholders were required to file proofs of loss for damages arising from Hurricane Isabel on or before January 14, 2004. Docket No. 130, Attachment 6.

Lowe issued a second memorandum on April 16, 2004, announcing FEMA's decision to implement "a claim review process to ensure that NFIP policyholders who ·filed claims following Hurricane Isabel receive an equitable loss settlement." Docket No., Exhibit 17. In an attachment addressed specifically to policyholders, the memorandum stated that "[i]f you have not received compensation equal to your maximum policy coverage, you are being given the option to request a claim review." *Id.* Significantly, the memorandum made no reference to the proof of loss requirement and said nothing to indicate that FEMA was waiving any of the preconditions for challenging a claim under the SFIP.

On May 1, 2003, however, FEMA increased the ICC coverage limit to $30,000. 68 Fed. Reg. 9895 (March 3, 2004). This increase was applied to policies then in effect pursuant to the SFIP's Liberalization Clause. (*See* FEMA Bulletin W–03010, *available at* http:// bsa.nfipstat.com/wyobull/w–03010.pdf). (March 3, 2003).

5. Each plaintiff seeks damages only under the "Dwelling" provisions of his or her SFIP.

6. Pursuant to Article VII.J.4 of the SFIP, a proof of loss must ordinarily be filed within

60 days of the loss. As explained more fully below, however, FEMA extended this period for an additional 60 days for policyholders who suffered damages as a result of Hurricane Isabel.

7. Similarly, the SFIP provides that "[i]n completing the proof of loss, [the insured] must use [his or her] own judgment concerning the amount of loss and justify that amount." *Id.* Art.VII.J.5.

### B. *The Instant Claims:*

In the aftermath of Hurricane Isabel, the plaintiffs filed claims with their respective insurers to rehabilitate their flood-damaged homes. As we have already mentioned, it is undisputed that the plaintiffs were fully compensated for all amounts claimed in timely proofs of loss and that no additional proofs of loss remain unpaid. Accordingly, the particular details of each individual proof of loss are irrelevant to the legal analysis presented below.[8] The Court will therefore dispense with a lengthy recitation of the claims tendered by all nine plaintiffs.[9]

### C. *Procedural History:*

The plaintiffs filed this action on May 11, 2004, asserting claims for (i) breach of contract, (ii) breach of the implied covenant of good faith and fair dealing, and (iii) breach of fiduciary duty. Docket No. 1. In an order dated June 19, 2006, the Court dismissed the latter two claims and authorized limited discovery on the plaintiffs' breach of contract claim. Docket No. 117. At the close of discovery, all nine defendants filed motions for summary judgment.

### II. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (recognizing that trial judges have an "affirmative obligation" to keep unsupported claims and defenses from advancing to trial). A material fact is one that may affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether there is a genuine issue of material fact, the Court views the facts, and all inferences to be drawn from them, in the light most favorable to the non-moving party. *See, e.g., Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987).

---

**8.** Our conclusion on this point is supported by the fact that the instant suit was filed as a putative class action. As plaintiffs' counsel acknowledged during a telephone conference call on April 21, 2005, "[w]e are not talking about individual issues. We are not talking about getting into an argument or a litigation over each and every policy. [ ] Every policy was identical, and *we believe that [the] breach of contract was systemic and that it was done on the same basis for each one of the class members.*" Transcript of Telephone Conference, April 21, 2005, Docket No. 62, at 21. (Emphasis supplied).

**9.** In their respective opening briefs, the defendants painstakingly set forth the date, amount, and ultimate disposition of each and every proof of loss submitted by their insureds. *See, e.g.,* Docket No. 130 at 9–12 (claims by Wayne Blackmon against State Farm Fire & Cas. Co.); Docket No. 131 at 9–11 (claims by Michael Rhea against Allstate Ins. Co.); Docket No. 132 at 2–4 (claims by Catherine Howell against Indemnity Ins. Co. of North America); Docket No. 133 at 2–4 (claims by Russyln Dodson against Standard Fire Ins. Co.); Docket No. 134 at 10–12 (claims by Kathryn Smith against USAA Gen. Indemnity Co.); Docket No. 135 at 10–11 (claims by Frederick Kotrla against Harleysville Ins. Co.); Docket No. 136 at 10–12 (claims by Henry Hale against Omaha Property & Cas. Co.); Docket No. 137 at 10–13 (claims by Robert Valentin against Selective Ins. Co. of the Southeast); and Docket No. 138 at 9–12 (claims by Al Garner against South Carolina Ins. Co.). The plaintiffs do not dispute these recitations, and they make little effort to reproduce them in their consolidated opposition. *See* Docket No. 21, 11–28.

## III. Discussion

As discussed above, the defendants' motions rest on a single legal premise: namely, that the plaintiffs have been fully compensated for all amounts claimed in timely proofs of loss, and that their failure to submit proofs of loss for the additional benefits claimed in this lawsuit precludes further recovery. In support of this position, the defendants rely on a long, unbroken line of cases demanding strict compliance with the terms and conditions of the SFIP. *See, e.g., Dawkins v. Witt,* 318 F.3d 606 (4th Cir.2003); *Mancini v. Redland Ins. Co.,* 248 F.3d 729 (8th Cir.2001); *Wagner v. Director, FEMA,* 847 F.2d 515 (9th Cir.1988); *Sanz v. United States Sec. Ins. Co.,* 328 F.3d 1314 (11th Cir.2003); *Neuser v. Hocker,* 246 F.3d 508 (6th Cir.2001).

In their consolidated response, the plaintiffs make seven arguments opposing the defendants' motions for summary judgment. Some of the plaintiffs' arguments are contractual, some rest on equitable principles, and one is grounded in the Constitution. Each is addressed in turn below.

### 1. *Compliance with SFIP Requirements*

■ The plaintiffs first contend that they complied with the requirements of the SFIP and may therefore sue to recover the additional benefits claimed in this lawsuit. According to the plaintiffs, they satisfied their procedural obligations by cooperating with the Defendants' adjusters and submitting timely proofs of loss, "all the while informing [the] Defendants that the amounts put forth [in their proofs of loss] were insufficient." Pl.'s Mem. at 31. Though conceding that they have been paid in full for all amounts claimed in timely proofs of loss, the plaintiffs contend that the SFIP does not "cap contract dam-

ages at the amount stated in a [proof of loss]." *Id.* To the extent their proofs of loss failed to include additional costs, the plaintiffs argue that "the Defendants are responsible." *Id.* at 2.

None of these arguments is consistent with the plain language of the SFIP. As an initial matter, the SFIP clearly states that a proof of loss is an insured's "statement of *the* amount that [he or she] is claiming under the policy, signed and sworn to by [the insured]." 44 C.F.R. Part 61, App. A(1), Art. VII.J.4 (emphasis supplied). This language clearly envisions that policyholders will be bound by the amounts they claim in timely proofs of loss.[10] Were it otherwise, an insured could sue for any amount and the requirement would serve no purpose. Accordingly, the plaintiffs at bar are limited to benefits they claimed in timely proofs of loss, even if they "consistently disputed the amounts [that] the defendants should pay under the policy." Pl.'s Mem. at 31. *See, e.g., Ambassador Beach Condo. Ass'n Inc. v. Omaha Prop. & Cas. Ins. Co.,* 152 F.Supp.2d 1315, 1317 (N.D.Fla.2001) (Additional payments sought by a policyholder were not authorized "because they were not included in timely proofs of loss.")

Furthermore, the SFIP declares, in the section addressing "requirements in case of loss," that the responsibility for filing a proper proof of loss rests solely with the insured. 44 C.F.R. Part 61, App.A(1), Art. VII.J.4. ("In case of a flood loss to the insured property, *you* must ... send us a proof of loss[.]") (emphasis supplied). Although the SFIP anticipates that insureds may be assisted by an adjuster in completing their proofs of loss, it nevertheless provides that "this is a matter of courtesy only," and that *"you* [i.e., the insured] must still send us a proof of loss within 60

---

**10.** *Accord Dawkins,* 318 F.3d at 608 ("A proof of loss is a document that provides FEMA with a *statement of the amount of the claim.*") (Emphasis supplied).

days of the loss[.]" *Id.,* Art. VII.J.7 (emphasis supplied). Similarly, the SFIP states that "in completing the proof of loss, [the insured] must use [his or her] own judgment concerning the amount of the loss[.]" *Id.* Art. VII.5. This language clearly notifies insureds that nothing the adjuster does or fails to do relieves them of the obligation to file a proper proof of loss. In light of this authority, and mindful of the fact that NFIP insureds are charged with knowledge of the program's requirements,[11] we reject the argument that the defendants or their adjusters are somehow responsible for the plaintiffs' failure to submit proper proofs of loss.

In sum, the SFIP provides that a policyholder must submit a timely proof of loss for a specific sum certain in order to sue for benefits. *See, e.g., Forman v. FEMA,* 138 F.3d 543, 545 (5th Cir.1998). Notwithstanding the assistance of an adjuster, this responsibility rests at all times with the insured. By failing to submit proper proofs of loss for the damages now in controversy, the plaintiffs failed to comply with the terms of the SFIP.

### 2. *Waiver*

■ The plaintiffs' second argument is that FEMA waived the proof of loss requirement for NFIP policyholders whose homes were damaged as a result of Hurricane Isabel. In support of this position, the plaintiffs point to Anthony's Lowe's April 16, 2004 bulletin announcing FEMA's decision to implement a claim review process to ensure that Hurricane Isabel claimants "receive[ ] an equitable settlement." *Pl.'s Mem.* at 32. After reviewing the language of the bulletin, however, we conclude that this document is insufficient as a matter of law to constitute an express waiver under the terms of the SFIP.

The SFIP declares that "[t]his policy may not be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator." *West Augusta Development Corp. v. Giuffrida,* 717 F.2d 139, 141 (4th Cir.1983), *citing* 44 C.F.R. § 61.13(d). In accordance with this provision, the federal courts have uniformly held that the SFIP does not allow for constructive waiver. *See, e.g., Moffet v. Computer Sci. Corp.,* No. 8:05–cv–01547 (D.Md.2007); (Messite, J.); *Suopys v. Omaha Prop. & Cas.,* 404 F.3d 805, 811 (3rd Cir.2005); *Wagner v. FEMA,* 847 F.2d 515, 521 (9th Cir.1988). Accordingly, in order for us to conclude that FEMA bulletin waived the proof loss requirement, the waiver must be apparent from the face of the document itself.

In this case, the bulletin on which the plaintiffs rely fails to even mention the SFIP's proof of loss requirement. As a result—and as Judge Messitte held just last year—the bulletin "can hardly be said to have expressly waived [that] requirement. To the contrary, the notice did no more than inform the plaintiffs that they could re-submit their claims for further review." *Moffett,* 8:05–cv–01547 *slip op.* at 9; *see also Harris v. State Farm,* 2006 WL 73602 (E.D.Va.2006) (reaching same result). We find this reasoning persuasive. Accordingly, we join in the holding that FEMA's mere willingness to reconsider the plaintiffs' claims did not effect a waiver under the terms of the SFIP.

---

**11.** *See, e.g. Harris v. State Farm Fire & Cas. Co.,* 2006 WL 73602 (E.D.Va.); *Federal Crop Insurance Co. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Heckler v. Community Health Services of Crawford County,* *Inc.,* 467 U.S. 51, 63, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) ("Those who seek public funds must act with scrupulous regard for the requirements of the law.")

### 3. *Material Breach*

■ The plaintiffs' next argument is that their failure to comply with the proof of loss requirement is excused by the defendants' material breach of contract. According to the plaintiffs, the defendants breached their obligations under the SFIP by "mishandling the drafting and filing of [the] plaintiffs' [proofs of loss]." Pl.'s Mem. at 35. Specifically, the plaintiffs contend that the defendants: (i) "invad[ed] the insureds' contractual obligations and coerc[ed] insureds into signing [proofs of loss] that did not adequately compensate them"; (ii) employed adjusters who "ignored the limits on their authority set forth in the SFIP [by telling] the [p]laintiffs what would or would not be covered"; and (iii) "sent out settlement checks when no settlement had been reached." *Id.* at 36–37. Even if these allegations are true, however, none is sufficient to state a claim for breach of contract.

Under the terms of their SFIPs, the plaintiffs were required to cooperate with the defendants' adjusters by allowing them to inspect their properties and by providing information about the damage caused by the hurricane. The plaintiffs were not required, however, to accept the adjusters' valuations, nor were they prevented from retaining their own adjusters and/or contractors to assist them in completing their proofs of loss. In fact, many of the plaintiffs in this case did precisely that.

As we have explained, the SFIP provides that compliance with the proof of loss requirement is the insured's contractual duty. Accordingly, although the SFIP anticipates that insureds may be assisted by an adjuster in completing their proofs of loss, it "candidly warns potential claimants not to rely on FEMA's assistance." *Wagner*, 847 F.2d at 520. Instead, insureds are obligated to use their own judgment in completing their proofs of loss. As the foregoing discussion makes clear, the plaintiffs in this case remained free at all times to perform this responsibility. Accordingly, if the plaintiffs submitted proofs of loss that did not reflect their own independent judgment, they have only themselves to blame.[12]

Furthermore, even if it were somehow established that the defendants materially breached the SFIP, the plaintiffs elected to continue the contract by claiming and receiving additional benefits under the policy. As the plaintiffs acknowledge in their consolidated memorandum, "[a] material breach does not automatically end a contract. [Rather,] the insured party can choose between canceling the contract and continuing it, and if he elects to continue the contract, the obligations of both parties remain in force[.]" Pl.'s Mem. at 36, *citing Cities Serv. Helex, Inc. v. United States*, 211 Ct.Cl. 222, 543 F.2d 1306, 1313 (1976). Having failed to cancel the contract after the defendants' alleged breach, the plaintiffs remained responsible for complying with the terms of the SFIP. Accordingly, assuming for the moment that the defendants breached the contract, their conduct

---

12. The plaintiffs' argument that the defendants "breached the SFIP by sending out settlement checks when no settlement had been reached" is similarly unavailing. Under Article VII.M.1 of the SFIP, a WYO insurer is required to pay a claim within 60 days after the proof of loss has been submitted *and* (1) an agreement is reached with the policyholder; (2) there is an entry of final judgment; or (3) an appraisal award is filed with FEMA. C.F.R. Part 61, App. A(1), Art VII.M.1. Because there was no final judgment or entry of appraisal in this case, the plaintiffs contend that the defendants were required to "reach an agreement" with them before distributing payments under the policy. In this case, however, the defendants tendered settlement checks in the full amount claimed. Thus, an "agreement" had been reached within the meaning of Article VII.M.1, and plaintiffs' argument is therefore inapposite.

does not excuse the plaintiffs' failure to file a proper proof of loss.

### 4. Breach of the Implied Covenant of Good Faith and Fair Dealing

■ There are recognized doctrines under tort and/or contract law that enable a contracting party to avoid his obligations due to the counter-party's illegal or oppressive behavior. For example, a contract may be rendered unenforceable by fraud, or a party with the proverbial "gun to his head" may avoid a contract due to duress. As we explain in greater detail below, however, the plaintiffs are unable to establish any of these traditional defenses to the creation or enforcement of a contract. Accordingly, the plaintiffs argue instead that the defendants' conduct in handling their claims violates the implied covenant of good faith and fair dealing, excusing their failure to comply with the terms and conditions of their SFIPs.

According to the plaintiffs, the defendants' bad faith "should be considered as evidence of breach of contract," notwithstanding our prior holding that a breach of the implied covenant does not create a separate cause of action under federal common law. Pl.'s Mem. at 38. In contending that the defendants materially breached the SFIP by acting in a manner that violates the implied covenant of good faith and fair dealing, however, the defendants have simply repackaged their already-rejected arguments under a "straight" breach of contract analysis.[13]

This is a circular argument that must be rejected.

■ Furthermore, even assuming that the SFIP contains an implied covenant of good faith and fair dealing, the plaintiffs have failed to demonstrate that it was breached. As the plaintiffs themselves acknowledge, the government is presumed to have acted in good faith in performing its obligations under a contract. Pl.'s Mem. at 39; *citing Southern California Edison v. United States,* 58 Fed.Cl. 313, 325 (2003) "Thus, in order to state a claim premised on a violation of the obligation of good faith and fair dealing, [the] plaintiffs must allege facts that if proved would constitute malice or an intent to injure." *So. Cal. Edison,* 58 Fed. Cl. at 325 (internal citations omitted). As fiscal agents of the United States, the defendants are entitled to benefit of this presumption. *See, e.g., Moffett v. Computer Sciences Corp.,* 457 F.Supp.2d 571, 575 (D.Md.2006) ("[A] suit against a WYO company is the functional equivalent of a suit against the government.") (Internal quotation omitted).

As we have already explained, the plaintiffs were obligated under the SFIP to exercise their own judgment in completing their proofs of loss. Viewing the facts in the light most favorable to the plaintiffs, the record contains no proof that the defendants or their adjusters prevented the plaintiffs from performing this responsibility, let alone that they did so intentionally or with malice. Accordingly, even if the

---

13. In support of their argument that the defendants' bad faith should be considered as evidence of breach of contract, the plaintiffs rely on a statement the Court made during a hearing on the defendants' motion to dismiss counts II and III of the first amended complaint. During the hearing, the Court tested the assumptions of both parties by remarking that, in interpreting a contract and delineating the parties' duties and prerogatives there-

under, a court would assume that the parties would operate reasonably and in good faith. *See* Transcript of June 14, 2006 Oral Argument, 78:17–19, Docket No. 146, Exhibit F. The plaintiffs have seized upon this snippet of commentary and put it forward as the Court's recognition that the SFIP contains an implied covenant of good faith and fair dealing. This interpretation is more than the record will bear.

implied covenant of good faith and fair dealing applies in this case, the plaintiffs have failed to show that it was breached.

### 5. Estoppel

According to the plaintiffs, the defendants should be equitably estopped from raising the defense that the plaintiffs failed to submit proper proofs of loss for the benefits presently at issue. As the defendants point out, however, the Supreme Court has "never upheld an assertion of estoppel against the Government by a claimant seeking public funds." *Office of Personnel Management v. Richmond,* 496 U.S. 414, 434, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). Furthermore, as Judge Messitte recently recognized in the *Moffett* decision, the lower federal courts "have consistently rejected estoppel arguments based on [the] actions or inactions of either FEMA or WYOs relating to the requirement to submit a timely and completed proof of loss." No. 05–cv–01547 (D.Md. 2007); *citing Dawkins v. Witt,* 318 F.3d 606, 612 (4th Cir.2003).

The plaintiffs respond that neither the Supreme Court nor the Fourth Circuit has conclusively held that estoppel may not lie against the Government. This is correct. In *Dawkins,* the Fourth Circuit acknowledged that "estoppel may [ ] be justified ... in the presence of affirmative misconduct by government agents." 318 F.3d at 611. Accordingly, in order to prevail on an estoppel claim in the context of these proceedings, the plaintiffs must "not only satisfy the traditional requirements [of] equitable estoppel, but they [also] must show affirmative misconduct by [the defendants.]" *Id.* This they are unable to do.

■ Before reaching the "affirmative misconduct" requirement, we first observe that the plaintiffs are unable to satisfy at least one of the four traditional requirements of equitable estoppel. In order to state a claim for equitable estoppel, the plaintiffs must show that: (1) the party to be estopped knew the true facts; (2) the party to be estopped intended for his conduct to be acted upon or acted in such a way that the party asserting estoppel had a right to believe that it was intended; (3) the party claiming estoppel was ignorant of the true facts; and (4) the misconduct was relied upon to the detriment of the party seeking estoppel. *Dawkins,* 318 F.3d at 611 n. 4.

At a minimum, the plaintiffs have failed to satisfy the third requirement, i.e., that they "were ignorant of the true facts." According to the plaintiffs, they were unaware of the consequences of failing to submit a proper proof of loss. Pl.'s Mem. at 42. ("Plaintiffs had no reason to believe that, in [failing to submit proofs of loss for the benefits now at issue], they were waiving their right to seek additional funds later.") As beneficiaries under the SFIP, however, the plaintiffs were charged with knowledge of their policies and the governing NFIP regulations. *See Harris v. State Farm Fire & Cas. Co.,* 2006 WL 73602 (E.D.Va.); *Fed Crop Ins. Co. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 63, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). In accordance with this presumption, the plaintiffs are prevented from claiming that they were "ignorant of the true facts" concerning their obligation to file a proper proof of loss.

Furthermore, even if the plaintiffs could somehow satisfy the traditional requirements of equitable estoppel, they are unable to show that the defendants engaged in affirmative misconduct. Assuming, *arguendo,* that the plaintiffs' allegations are true, the defendants and their adjusters encouraged the plaintiffs to submit inadequate proofs of loss. As we have already discussed *ad nauseam,* however, the plain-

tiffs were obligated to exercise their own judgment in completing their proofs of loss, and they were free at all times to reject the adjusters' assistance. Accordingly, assuming for the moment that the adjusters' conduct was "unprofessional or misleading," it is "no worse than that [which] the Supreme Court has determined does not ... justify estoppel against the government." *Dawkins,* 318 F.3d at 612.

### 6. *Duress*

The plaintiffs contend that their proofs of loss were submitted under duress, and "[a]s such ... cannot serve as the cap of the amounts [p]laintiffs may seek." Pl.'s Mem. at 45–46. As we explain below, however, the duress defense has no application here.

■ Assuming, *arguendo*, that a proof of loss is somehow a "contract" which may be voided upon a showing of duress, the plaintiffs have failed to satisfy the elements of the defense. "To render a contract unenforceable for duress, a party must establish (1) that it involuntarily accepted the other party's terms, (2) that [the] circumstances permitted no other alternative, and (3) that such circumstances were the result of the other party's coercive acts." *North Star Steel Co. v. United States,* 477 F.3d 1324, 1334 (Fed.Cir.2007). Viewing the facts in the light most favorable to the plaintiffs—as we are required to do on a motion for summary judgment—the plaintiffs have failed to satisfy the second and third prongs of the test.

■ According to the plaintiffs, the hardship occasioned by Hurricane Isabel "permitted no other alternative" than to accept the proofs of loss prepared by the defendants' adjusters. The plaintiffs have not established, however, that they were prevented from rejecting the adjusters' estimates or from submitting additional proofs of loss. In fact, the record discloses

that many of the plaintiffs filed (and were fully compensated for) supplemental proofs of loss. Accordingly, the plaintiffs have failed to show that they were left without alternatives.

Similarly, the plaintiffs have not established that the circumstances they confronted were the result of the defendants' coercive acts. To be sure, Hurricane Isabel was a calamitous event, and the damage it caused it placed significant financial pressure on its victims and the NFIP alike. In the wake of a major storm, independent adjusters are likely to be backlogged, and contractors may be difficult to find or delayed in submitting their bids to repair a loss. In creating the SFIP, however, Congress presumed to take all of this into account.

The SFIP contains a number of mechanisms for managing with the difficulties which inevitably follow a major flood. First, FEMA may extend the period for filing a proof of loss (as it did in this case) in order to afford policyholders a fair opportunity to present their claims. In addition, claimants may apply for individual waivers of the proof of loss requirement or obtain partial payment of the undisputed portion of their claim while the disputed portion(s) is negotiated or litigated.

In this case, the plaintiffs have not established that they were prevented from retaining independent contractors or adjusters to assist them in completing their proofs of loss. Even if they were, however, the proper course of action was to apply for an individual waiver of the proof of loss requirement, or for an extension of 120–day time period for filing a claim. In contending that their failure to comply with the SFIP should be excused under the difficult circumstances of this case, the plaintiffs are asking the Court to determine retroactively, on a case-by-case basis, whether individual hardship justifies an ex-

tension of time. Such a decision should be made by FEMA before the applicable time limit has expired.

### 7. *Full and Fair Review*

 The plaintiffs' final argument is that "interpreting the SFIP in the manner defendants request would constitute a denial of the plaintiffs' due process rights." Pl.'s Mem. at 46. Specifically, the plaintiffs contend that enforcing the proof of loss requirement to bar their claims for additional benefits would result in a waiver of their right to judicial review. *Id.* This argument is unavailing.

It is well-established that Congress may impose reasonable procedural requirements for invoking the right to adjudication. *See, e.g., Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.") In this case, Congress has delegated its authority to FEMA, which has determined that NFIP policyholders must file a timely and complete proof of loss before suing to challenge coverage determinations made under the terms of their SFIPs.

Despite their assertions to the contrary, the plaintiffs are unable to show that the proof of loss requirement is an unreasonable or arbitrary limitation on their right to judicial review. In fact, by all indications the proof of loss requirement is reasonable means of advancing the NFIP's objectives of quickly compensating insureds while at the same time managing the program's impact on the federal treasury. Accordingly, "[w]hile compiling the required information [for completing a proof of loss] in 60 days [14] under stressful circumstances may be difficult," [15] *Dawkins*, 318 F.3d at 612, it is not so difficult as to constitute a denial of due process.[16] *Accord Schumitzki v. FEMA*, 656 F.Supp. 430, 433 (D.N.J.1987) (Reaching same result).

### IV. Conclusion

It is undisputed that the plaintiffs failed to submit timely and complete proofs of loss for the benefits claimed in this lawsuit. As the foregoing analysis makes clear, the plaintiffs' failure to comply with the terms of their SFIPs will not be excused on contractual, equitable, or constitutional grounds. Accordingly, the plaintiffs are barred from recovering additional benefits, and the Court will grant summary judgment in favor of their respective insurers. A separate order follows.

It is so ORDERED.

### *ORDER*

For the reasons stated in the memorandum of even date, the Court hereby:

(i) GRANTS Defendant State Farm Insurance Company's Motion for Summary Judgment (Docket No. 130);

(ii) GRANTS Defendant Allstate Insurance Company's Motion for Summary Judgment (Docket No. 131);

---

**14.** As we have explained, FEMA extended this period to 120 days for claimants who suffered property damage as a result of Hurricane Isabel.

**15.** *Cf. Rock Island, A. & L.R. Co. v. United States*, 254 U.S. 141, 143, 41 S.Ct. 55, 65 L.Ed. 188 (1920). ("Men must turn square corners when they deal with the Government.") (Holmes, J.).

**16.** The plaintiffs contend that the SFIP is a contract of adhesion, and as such may not be interpreted as a waiver of their right to judicial review. Pl.'s Mem. at 48. The plaintiffs have failed to explain, however, how a federal regulation can somehow qualify as a contract of adhesion.

(iii) GRANTS Defendant Indemnity Insurance Company of North America's Motion for Summary Judgment (Docket No. 132);

(iv) GRANTS Defendant Standard Fire Insurance Company's Motion to be substituted as the proper party to this litigation (Docket No. 132);

(v) GRANTS Defendant Standard Fire Insurance Company's Motion for Summary Judgment (Docket No. 133);

(vi) GRANTS Defendant USAA General Indemnity Company's Motion for Summary Judgment (Docket No. 134);

(vii) GRANTS Defendant Harleysville Insurance Company's Motion for Summary Judgment (Docket No. 135);

(viii) GRANTS Defendant Omaha Property & Casualty Corp.'s Motion for Summary Judgment (Docket No. 136)

(ix) GRANTS Defendant Selective Insurance Company of the Southeast's Motion for Summary Judgment (Docket No. 137);

(x) GRANTS Defendant South Carolina Insurance Company's Motion for Summary Judgment (Docket No. 138); and

(xi) DIRECTS the Clerk to close the case.

It is so ORDERED.