**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0387n.06

**No. 09-1081**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jun 25, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| LAWRENCE D. KORN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| | ) | |
| PAUL REVERE LIFE INSURANCE | ) | |
| COMPANH, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:  SILER and ROGERS, Circuit Judges; BELL, District Judge.[*]

**PER CURIAM.**  On February 12, 2004, Plaintiff-Appellant Lawrence D. Korn ("Korn")
filed a complaint in the United States District Court for the Eastern District of Michigan against
Defendant-Appellee Paul Revere Life Insurance Company ("Paul Revere") alleging that Paul Revere
breached the terms of a disability insurance policy by denying Korn's claim for benefits.  On October
30, 2008, Paul Revere filed a motion for summary judgment on this claim.  On November 13, 2008,
Korn filed a motion to amend his complaint to add a second breach of contract claim for breach of
a regulatory settlement agreement between Paul Revere and the insurance regulators of various
states, an agreement to which Korn contends he is a third-party beneficiary.  On December 31, 2008,

---

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District
of Michigan, sitting by designation.

the district court denied Korn's motion to amend his complaint and granted Paul Revere's motion

for summary judgment. Korn appeals both orders.

## I. Factual Background

In 1988, Korn purchased an insurance policy ("Policy") from Paul Revere, which entitled

him to monthly payments in the event that he became totally disabled. The Policy defines a "total

disability" as a disability because of which the insured is "unable to perform the important duties of

[his] Occupation," and is "under the regular and personal care of a Physician." (*Korn v. Paul Revere

Life Ins. Co.*, No. 04-CV-70821 (E.D. Mich. filed Feb. 12, 2004), Dkt. No. 64, Ex. A ¶ 1.9.)[1] The

Policy requires Korn to provide Paul Revere with "proof of loss" for each month for which he claims

benefits. (*Id*. at ¶ 9.4.) Proof of loss explicitly includes proof of prior earnings, such as personal and

business tax returns. (*Id.*)

Korn practiced law – he was a spokesman and marketer for personal injury cases until May

of 2000, when Korn contends that psychiatric problems, depression, and memory problems led him

to abandon his practice. Korn filed a claim for benefits under the Policy on October 14, 2000.

Because an insured is only considered totally disabled, and thus entitled to benefits, if he is "unable

to perform the important duties of [his] Occupation," Paul Revere required that Korn's claim for

benefits include an "occupational description" form, which requested Korn to "list the duties of [his]

occupation(s) in order of their importance, with a detailed description of each." (Dkt. No. 64, Ex.

D.) Korn listed his most important occupational duties as company spokesperson, strategic

---

[1]Unless otherwise indicated, all references to "Dkt. No." refer to the district court docket
sheet.

2

planning/research, client sign up, court appearances, and commercial-making, in that order. (*Id.*) Along with his claim form, Korn submitted medical examination reports from Doctors Walter Sabota, Corydon Clark, and Clifford Levin in support of his claim for benefits. (Dkt. No. 71, Ex. N.)

On October 23, 2000, Paul Revere notified Korn that it had received his claim for benefits, and that a customer care specialist would soon contact him regarding additional information that would be needed to satisfy the proof-of-loss requirement. On October 31, 2000, customer care specialist Natasha Farland contacted Korn by telephone and interviewed him regarding his claim. This interview resulted in a seven-page memorandum in which Ms. Farland documented the substance of Korn's claim for benefits. Ms. Farland also told Korn that Paul Revere would be requiring additional information from him for purposes of the proof-of-loss requirement.

On November 1, 2000, Paul Revere sent a letter to Korn requesting information pertaining to Korn's court appearances during the twelve months preceding his disability, his business and personal tax returns for 1998 and 1999, an attending physician's statement certifying Korn's disability, the name and address of Korn's malpractice carrier, and additional information about the nature of Korn's law practice, as solicited through an "attorney questionnaire." (Dkt. No. 64, Ex. H.) Paul Revere noted that it needed this information to discern the primary duties of Korn's occupation and the extent to which Korn would be able to perform those duties going forward. (*Id.*) Korn submitted the attending physician's statement on November 9, 2000, and the completed

attorney questionnaire on November 12, 2000.[2]  On December 1, 2000, Korn notified Ms. Farland that he was in the process of gathering the remaining information, but that he believed many of the requested documents were not relevant to his claim.  (*Id.* at Ex. J.)  On December 6, 2000, Paul Revere reiterated its request for information pertaining to Korn's court appearances, tax returns and malpractice provider.  (*Id.* at Ex. I.)  On January 12, 2001, without submitting any documents, Korn notified Ms. Farland that he was "referring [her] correspondence" to his attorney, Andrew Kochanowski, and asked Ms. Farland to redirect her requests for information to him.  (*Id.* at Ex. L.)  Ms. Farland attempted to contact Mr. Kochanowski by telephone but was unsuccessful.  On February 8, 2001, Paul Revere denied Korn's claim for benefits on the ground that the evidence provided did not support Korn's claim that he was unable to work, and on the ground that he had not satisfied the proof-of-loss requirement by failing to submit the information requested in the November 1 and December 6 letters. (*Id.* at Ex. N.)

On October 29, 2003, attorney David Hollar, on behalf of Korn, requested and received from Paul Revere Korn's complete claim file.  Based on the information contained in the file, Mr. Hollar wrote a letter to Paul Revere concluding that the evidence did, in fact, support Korn's claim that he was unable to work.  (Dkt. No. 71, Ex. O.)  However, Mr. Hollar's letter did not explain Korn's failure to provide the information that had been requested.  (*Id.* at 5.)  Paul Revere did not respond to Mr. Hollar's letter.

---

[2]Paul Revere contends that it never received the questionnaire, but for purposes of the summary judgment motion the Court must view the evidence in the light most favorable to Korn. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

No. 09-1081
*Korn v. Paul Revere Life Ins. Co.*

On February 12, 2004, Korn sued Paul Revere for breach of contract arguing that Paul Revere wrongfully withheld disability benefits that were due under the Policy.[3] The district court required that court-supervised discovery be completed by September 30, 2008, that witness lists be exchanged by September 16, 2008, and that all pre-trial motions be filed by October 30, 2008. (Dkt. No. 44.) On October 30, 2008, Paul Revere filed a motion for summary judgment arguing that Korn had failed to provide adequate proof of loss to qualify for benefits, and that Paul Revere was entitled to judgment as a matter of law. (Dkt. No. 62.) On November 13, 2008, Korn filed a motion for leave to amend his complaint to state an additional breach of contract claim based on Paul Revere's alleged breach of a regulatory settlement agreement between it and the insurance regulators of various states, an agreement to which Korn contends he is a third-party beneficiary. (Dkt. No. 68.) On December 31, 2008, the district court denied Korn's motion to amend and granted Paul Revere's motion for summary judgment. (Dkt. No. 80.) Korn appeals both orders.

## II. Law and Analysis

*A. Paul Revere's Motion for Summary Judgment*

This Court reviews a grant of summary judgment de novo. *Sullivan v. Or. Ford, Inc.*, 559 F.3d 594, 594 (6th Cir. 2009). The movant is entitled to summary judgment if the pleadings and discovery demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Paul Revere argues that it is

---

[3]Although Korn's complaint seeks benefits for the monthly periods beginning September of 2000, this Court has previously ruled that a statute of limitations issue prevents Korn from claiming any benefits for monthly periods prior to November of 2000. *Korn v. Paul Revere Life Ins. Co.*, 238 F. App'x 109, 111 (6th Cir. 2007).

entitled to summary judgment on Korn's claim for breach of the Policy because Korn failed to submit adequate proof of loss within the time period required by the Policy. The Policy provides:

> Written proof of loss must be sent to Us within 90 days after the end of a period for which You are claiming benefits. . . . We can also require reasonable proof from You of Your:
> a. Prior Earnings; and
> b. Monthly Earnings for the month for which Disability is claimed.
> This may include personal and business tax returns, financial statements, accountant's statements or other proof acceptable to Us.

(Dkt. No. 64, Ex. A ¶ 9.4) The Policy also provides that Paul Revere's obligation to make payments to an insured begins only after Paul Revere receives "satisfactory" proof of loss. (*Id.* at ¶ 9.6.)

On November 1, 2000, and again on December 6, 2000, Paul Revere requested that Korn provide information pertaining to his court appearances during the twelve months preceding his disability, his business and personal tax returns for 1998 and 1999, and the name and address of Korn's malpractice carrier. Korn does not deny that he failed to submit this information, although Korn does argue that he did submit other "substantial documentation" to support his claim for benefits, including the October 14, 2000, claim form, medical records from three physicians, and the information conveyed to Ms. Farland during the October 31, 2000, phone interview. Korn also contends that the information he failed to submit was not relevant to his claim.

The parties agree that the Policy is not an ERISA-qualified policy and that Michigan state law governs Korn's breach of contract claim. If so provided in an insurance policy, an insured's obligation to provide proof of loss is a condition precedent to his receipt of benefits. However, Michigan law requires only "substantial compliance" with the proof-of-loss requirement. *See Westfield Ins. Co. v. Appleton*, 132 F. App'x 567, 574 (6th Cir. 2005); *Wineholt v. Cincinnati Ins.*

6

*Co.*, 179 F. Supp. 2d 742, 748-49 (W.D. Mich. 2001) (Quist, J.); *Gibson v. Group Ins. Co.*, 369

N.W.2d 484, 486 (Mich. Ct. App. 1985). Substantial compliance with a proof of loss requirement:

> generally means that the insured has supplied sufficient information to allow the
> insurer to investigate the insured's claim, estimate its rights and liabilities, and
> prevent fraud and unjust claims from being asserted, or, alternatively, that the insured
> has complied to the extent to which compliance is possible, in circumstances such
> as where proofs and documentation not supplied have been destroyed or otherwise
> made unavailable by reasons beyond the power of the insured.

*Wineholt*, 179 F. Supp. 2d at 749 (quoting Lee R. Russ & Thomas F. Segalla, Couch on Insurance

§ 186.36 (3d ed. 2009)). Although less-than-perfect compliance with the proof-of-loss requirement

will not bar an insured's recovery in some circumstances, "substantial compliance requires more than

a minimal effort." *Id.* at 752. "The insured should make a reasonable effort to provide information

reasonably within its possession and with a sufficient degree of particularity to allow the insurer to

make an informed review of the claim." *Id.*

Korn admits that he failed to provide Paul Revere with information pertaining to his court

appearances during the twelve months preceding his disability and his business and personal tax

returns for 1998 and 1999, even though Paul Revere repeatedly requested this information and

Korn's insurance policy expressly identified it as part of the proof-of-loss requirement. In light of

this failure, the Court cannot conclude that Korn substantially complied with the proof-of-loss

requirement. Korn was only entitled to insurance benefits if his disability rendered him "unable to

perform the important duties of [his] Occupation." In his initial request for benefits, Korn listed

"court appearances" as one of his important occupational duties. Proof of Korn's involvement in

court proceedings leading up to his disability, and the extent of this involvement, was necessary for

7

Paul Revere to determine if Korn's disability negatively affected the manner in which he practiced law prior to his disability. In the same vein, Korn's income prior to his disability, as reflected by his 1998 and 1999 tax returns, and whether that income declined in the year 2000 and later, shed light on Korn's ability to engage in the important duties of his law practice following the onset of his disability. Without evidence substantiating the nature of Korn's law practice prior to his disability, including the extent of his court appearances, Paul Revere would have been unable to verify that his involvement in his law practice diminished as a result of his disability, and Korn points to no substitute evidence that he provided to Paul Revere that would have rendered the tax returns and court appearance documentation superfluous and unnecessary.

In addition, Mr. Kochanowski's failure to provide the requested information does not excuse Korn's neglect. When Korn notified Ms. Farland that he was "referring [her] correspondence" to his attorney, he had already been in possession of the November 1 and December 6 letters for several weeks. At his deposition, Korn acknowledged his understanding that it was his obligation to comply with information requests, and he had actual knowledge that he was under such a request at the time he retained Mr. Kochanowski. Thus, to satisfy the proof-of-loss requirement, Korn could have either submitted the requested information himself, or ensured that Mr. Kochanowski submitted it for him. He did neither. The Court therefore cannot conclude that Korn exhibited the requisite "reasonable effort" to satisfy the proof-of-loss requirement. *See Wineholt*, 179 F. Supp. 2d at 752; *see also Westfield Ins. Co.*, 132 F. App'x at 575.

Although whether an insured substantially complied with a proof-of-loss requirement is often a question of fact not to be decided on summary disposition, *see Griswold Props., L.L.C. v.*

8

*Lexington Ins., Co.*, 740 N.W.2d 659, 677 (Mich. Ct. App. 2007), in this case no reasonable fact-finder could determine that Korn did substantially comply with the requirement. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-53 (1986). We must accordingly affirm the district court's grant of summary judgment in favor of Paul Revere.

B. *Korn's Motion to Amend*

This Court reviews the district court's denial of Korn's motion to amend for abuse of discretion. *Leary v. Daeschner*, 349 F.3d 888, 904 (6th Cir. 2003). "A district court's decision [to deny a motion to amend] is to be afforded great deference; it 'will be disturbed only if the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard.'" *Id.* (quoting *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997)).

Two independent standards govern the circumstances under which Korn was permitted to amend his complaint. First, the Rule 16 scheduling order, set by the district court in this case on March 23, 2008, provides that "[a]ny motion to amend the complaint . . . must be based on reasonable cause and, if based on newly discovered information, be made promptly after receipt of the information upon which the proposed amendment is based." (Dkt. No. 44, Scheduling Order ¶ 2.) Second, Korn's motion to amend his complaint must also satisfy the standard set forth in *Leary*. Although, as required by Rule 15(a)(2) of the Federal Rules of Civil Procedure, generally a district court must "freely give leave to amend," in *Leary* this Court recognized that a different standard applies when a proposed amendment is so late that it would require the modification of a Rule 16 scheduling order. In such a case, the movant must demonstrate "good cause" for his failure to move

to amend at a time that would not have required modification of the scheduling order. *Leary*, 349 F.3d at 905-09. In determining whether the "good cause" standard is met, the district court must consider whether the amendment will prejudice the party opposing it. *Id*. at 906, 908. Though the Rule 16 scheduling order in this matter did not specifically set a deadline for filing motions to amend the pleadings, the scheduling order did require that "pretrial motions requiring extensive briefing and consideration" be filed by October 30, 2008. (Dkt. No. 44, ¶ 6.) Korn's motion to amend his complaint is a "pretrial motion[] requiring extensive briefing and consideration," since it sought to add an entirely new claim for breach of a separate contract and would have undoubtedly required a response from Paul Revere and substantial consideration by the district court. Because Korn filed this motion on November 13, 2008, two weeks after the October 30, 2008, deadline, the district court could only entertain this motion if the court modified the scheduling order. In addition, the scheduling order required that final witnesses be identified by September 16, 2008, and that discovery be completed by September 30, 2008. (*Id.* at ¶¶ 3, 4.) Because Korn's motion to amend sought to add a substantial new claim for which Paul Revere had not conducted any discovery, the discovery deadlines set by the scheduling order likely would have also required modification.

Thus, the district court was obligated to allow the amendment only if Korn satisfied both the standard set forth in the scheduling order, requiring Korn to move to amend promptly upon learning of the information on which the amendment was based, and the standard set forth in *Leary*, requiring Korn to demonstrate good cause for its failure to move to amend at a time that would not have required modification of the scheduling order and requiring the district court to consider whether the amendment would prejudice Paul Revere. Rather than focusing on the standards governing

amendments set forth in the scheduling order and in *Leary*, Korn dedicates a significant portion of his brief to arguing the merits of the claim that he desires to add. In 2005, the insurance regulators of all fifty states conducted an investigation into questionable claims handling practices of various insurance companies, including Paul Revere. The investigation resulted in a regulatory settlement agreement ("RSA") between the regulators and the targeted insurance companies, in which the companies agreed to heightened claims assessment requirements and to re-evaluate certain claims that had previously been denied.[4] Korn claims that he was a third-party beneficiary of the RSA, and that Paul Revere breached the obligations it owed to him. The merits of this claim are irrelevant to this appeal, however, if the district court did not abuse its discretion in denying Korn's request to add the claim to the complaint. The complaint and pleadings prior to Korn's motion to amend allege only breach of the Policy itself and make no mention of a claim for breach of the RSA.

As for whether the district court abused its discretion in denying Korn's request to amend, Korn argues only that an amendment to his complaint would not have prejudiced Paul Revere. The parties dispute the extent to which, had the district court permitted the amendment on November 13, 2009, Paul Revere would have been able to conduct discovery on the new claim. Korn points out that, even though the official discovery deadlines had expired by the time he sought leave to amend, the scheduling order left room for Paul Revere to conduct additional discovery after the deadlines with the consent of Korn. (Dkt. No. 44, ¶ 3.) However, because discovery after September 30, 2008,

---

[4]In general, the RSA required that the companies send notice to individuals whose claims had been denied for specified reasons after January 1, 2000, that they were entitled to have their claims reassessed. Korn claims that he never received this notice.

11

was permitted only upon mutual consent, nothing prevented Korn from denying Paul Revere's requests for information pertaining to Korn's new claim. Paul Revere's inability to freely gather information about Korn's new claim would have clearly prejudiced Paul Revere.

Even if the Court were to agree that an amendment would not have prejudiced Paul Revere, prejudice to Paul Revere is merely a consideration that informs whether Korn has satisfied the "good cause" requirement of the *Leary* standard. To satisfy the *Leary* standard, Korn must also explain why he failed to move for the amendment at a time that would not have required a modification of the scheduling order. *Leary*, 349 F.3d at 906-08. Korn fails to do so. The RSA, the contract on which Korn's proposed amendment is based, has been publicly available since its implementation in January of 2005. In addition, Korn was clearly aware of the RSA when he asked Ms. Farland about it in her deposition on October 23, 2008. (Dkt. No. 73, at 167.) Yet Korn did not move to add his claim for breach of the RSA until November 13, 2008, forty-four days after the close of discovery and fourteen days after the deadline for filing pre-trial motions requiring extensive briefing. Because Korn does not explain his delay in moving to amend, Korn has not satisfied the "good cause" requirement imposed by *Leary*. Similarly, because Korn does not explain why, after receiving actual knowledge of the RSA, he waited to seek leave to amend until after the expiration of the discovery and motion-filing deadlines, Korn has not satisfied the requirement imposed by the scheduling order that motions to amend the complaint "be made promptly after receipt of the information upon which the proposed amendment is based." (Dkt. No. 44, ¶ 2.) Whether the district court based its decision to deny Korn's motion to amend on Korn's failure to satisfy the standard set

forth in *Leary* or the standard set forth in the scheduling order, the district court did not abuse its discretion.

### III. Conclusion

Information pertaining to Korn's court appearances and income prior to his disability was necessary for Paul Revere to adequately discern the affect of Korn's disability on his ability to practice law. Paul Revere requested this information from Korn on several separate occasions, and Korn failed to provide it within the required time frame. On these facts, no reasonable fact-finder could conclude that Korn substantially complied with the proof-of-loss requirement that was a condition precedent to his right to recover benefits under his plan.

Further, denial of Korn's motion to amend his complaint was proper under either the standard governing amendments set forth in the scheduling order or the standard governing amendments set forth in *Leary*. The amendment would have prejudiced Paul Revere by requiring it to defend a claim for which court-supervised discovery was no longer available, and Korn has not explained his decision to wait to file for leave to amend until four years after the implementation of the RSA, forty-four days after the close of discovery, and fourteen days after the deadline for filing pre-trial motions. The district court did not abuse its discretion in denying Korn's motion for leave to amend. Accordingly, for the foregoing reasons, we **AFFIRM.**