NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0528n.06

No. 10-2562

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*May 22, 2012*

LEONARD GREEN, Clerk

NEWBURGH/SIX MILE LIMITED
PARTNERSHIP II,

      Plaintiff-Appellee,

v.

ADLABS FILMS USA, INC.,

      Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

Before: CLAY AND GIBBONS, Circuit Judges; and KORMAN, District Judge.[*]

**JULIA SMITH GIBBONS, CIRCUIT JUDGE.** Defendant-appellant Adlabs Films USA,

Inc. ("Adlabs") entered into a fifteen-year lease with Newburgh/Six Mile Partnership II

("Newburgh"). Adlabs terminated the lease before taking over the premises. Newburgh brought an

action for rent and other charges against Adlabs. The district court granted summary judgment to

Newburgh. Adlabs then filed a motion for reconsideration arguing that summary judgment was

inappropriate because Newburgh failed to establish the rental value of the leased premises and the

district court erred by denying Adlabs's motion for leave to amend. The district court denied the

motion. For the following reasons, we affirm.

---

[*]The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

I.

On March 13, 2008, Newburgh (as landlord) and Adlabs (as tenant) entered into a fifteen-year lease (the "lease") for premises on the first floor of the Laurel Park Place building in Livonia, Michigan. Adlabs was to operate the leased premises primarily as a movie theater. At the time that the parties entered into the agreement, American Multi-Cinema, Inc. ("AMC") was occupying the leased premises pursuant to a lease agreement with Newburgh that was set to expire in October 2009. The lease set forth the anticipated commencement date as "[a]pproximately January 15, 2010 (dependent upon obtaining space from the current tenant)." The "term" provision of the lease further defined the commencement date as the earlier of (1) the date that Adlabs opens for business in the leased premises or (2) January 15, 2010.

The lease further provided that if Newburgh failed to deliver the premises on the commencement date,

> because the Leased Premises are not then ready for occupancy, or because the previous occupant of said premises is holding over, or for any other cause beyond Landlord's control (except for matters caused by Tenant's failure to timely perform its obligations hereunder, which is addressed in the following sentence), [Newburgh] shall not be liable to [Adlabs] for any damages as a result of [Newburgh]'s delay in delivering the Leased Premises.

The lease also provided that, should such a delay arise, the delay would not affect the validity of the lease or Adlabs's duties under the lease, and the commencement date would be postponed until the premises were ready for Adlabs to occupy them.

Following the execution of the lease, Newburgh was to use "commercially reasonable efforts" to obtain an early termination of AMC's lease of the premises such that Adlabs could receive

the premises on or before January 1, 2009.[1] Newburgh was also required to deliver the premises to

Adlabs in "as-is, where-is condition" such that the "majority of the improvements, fixtures and trade

fixtures" from AMC would be left in place for Adlabs's use and possession.

Despite engaging in negotiations with AMC, Newburgh was unable to obtain an early

termination of the lease from AMC, and as a result, did not deliver the premises to Adlabs by

January 1, 2009. On February 3, 2009, Adlabs's attorney sent a letter to Newburgh's representative,

Deborah King, stating that Adlabs "does not wish to move forward with the leasing of the premises."

The letter stated that "[t]he parties had agreed that if the Landlord failed to deliver the Premises by

the date of January 1, 2009, Adlabs would have the sole discretion to terminate this transaction."

As AMC was still occupying the Laurel Park Place premises, Adlabs asserted that it was "exercising

its right to not move forward with the transaction." On February 5, 2009, Adlabs sent another letter

to Newburgh which explained that "[t]here has been a drastic change in circumstances since the

parties discussed the proposed lease terms. [Adlab]'s financial position has changed and that makes

the proposed lease not economically viable."

After Adlabs informed Newburgh of its intention not to go forward with the lease, Newburgh

asked Adlabs to retract the letters several times, but after Adlabs failed to do so, Newburgh

---

[1]If delivery of premises was not made by January 1, 2009, then for every month in 2009 that delivery was delayed, when Adlabs finally received the premises, Adlabs would be entitled to pay monthly rent at fifty percent the rental rate set forth in the lease. The lease provides an illustration of how delayed delivery of the premises would affect the rent owed by Adlabs: "[b]y way of example only, if Landlord were to deliver possession of the Leased Premises to Tenant in March 2009, Tenant would be entitled to pay fifty percent (50%) of rent for the first (1st) three (3) months of the Term" (*i.e.*, March, April, and May 2009).

considered Adlabs in anticipatory breach of the lease and sought to find a replacement tenant to take over after AMC vacated the premises. At least two companies expressed interest in the space, but negotiations did not progress beyond a letter of intent, and Newburgh failed to find an economically viable tenant.

After failing to find a suitable tenant to replace Adlabs, Newburgh entered into a management agreement with Insight Management Consultants, LLC ("Insight") on July 16, 2009. Although Newburgh first considered leasing the premises to Insight, it ultimately decided that the companies should enter into a management agreement due to concerns that Insight may have been undercapitalized. Pursuant to the management agreement, Insight would act as an independent contractor for Newburgh and would operate the premises as a movie theater for a five-year term.

On March 20, 2009, Newburgh filed a three-count complaint against Adlabs which alleged that Adlabs breached the lease by wrongfully terminating prior to commencement and sought declaratory relief, specific performance, and contract damages. Adlabs answered the complaint, pled several affirmative defenses, and asserted two counterclaims.

The district court issued a scheduling order on July 15, 2009. Pursuant to the order, discovery was to close by October 30, 2009, pretrial motions were to be filed by November 30, 2009, and amendment of the pleadings was to occur only by order of the court.

On November 30, 2009, Newburgh moved for summary judgment on its claim for contract damages and Adlabs's counterclaims. Newburgh argued that the lease gave Adlabs no power of termination should delivery of the premises not occur by January 1, 2009. Newburgh further argued that Adlabs's reliance on an alleged oral agreement—in which Newburgh purportedly assured

Adlabs that it would have the right to terminate if it did not receive possession by January 1, 2009—made prior to the execution of the lease to contradict the express terms of the lease was barred by the parol evidence rule and the statute of frauds. Adlabs opposed the motion, arguing that it had the right to terminate the lease because Newburgh failed to deliver the leased premises with a substantial majority of the fixtures and improvements by January 1, 2009, and failed to use commercially reasonable efforts to obtain an early termination of the lease.

On April 8, 2010, Adlabs filed a motion for leave to amend the scheduling order and for leave to amend its answer, counterclaims, and affirmative defenses. Adlabs sought leave to add a counterclaim for specific performance, noting that it was prepared to proceed in accordance with the terms of the lease. Adlabs argued that the court should grant it leave to amend under Federal Rule of Civil Procedure 15(a)(2) because there was no undue delay or bad faith on its part and Newburgh would suffer no prejudice if Adlabs was granted leave to amend. Although not addressed in its motion, Adlabs also inserted an affirmative defense that Newburgh failed to mitigate damages into its proposed amended answer.

On July 13, 2010, the district court granted summary judgment in favor of Newburgh and denied Adlabs's motion for leave to amend. The court first addressed Adlabs's motion. The district court found that Adlabs failed to show good cause for its failure to seek leave to amend the scheduling order before the dispositive motion cut-off date. The prejudice that Newburgh would suffer also weighed against granting leave to amend. Finally, the court found that the proposed amendments would be futile because under Michigan law the defaulting party may not seek specific performance of a contract once a lease has been terminated and because the record did not contain

evidence that Newburgh failed to mitigate damages.[2] The court then outlined its reasons for granting

Newburgh's summary judgment on its contract damages claim and the basis for its award of

damages. Given that the terms of the lease unambiguously stated that Adlabs would not have a right

to terminate as long as Newburgh used commercially reasonable efforts to obtain an early

termination from AMC, the court concluded that Adlabs had breached the lease agreement when it

wrongfully terminated in February 2009. Applying *Tel-Ex Plaza, Inc. v. Hardees Restaurants, Inc.*,

255 N.W.2d 794, 796 (Mich. Ct. App. 1977), the court found that in the event of a tenant's breach,

a landlord is entitled to damages equivalent to the "excess of the agreed rent over: 1) the rental value

of the property, or 2) the rent the plaintiff can obtain for the property through reasonable diligence."

Although the court noted that Newburgh had not provided evidence of the rental value of the Laurel

Park Place premises, the court found that Newburgh had attempted but failed to secure a replacement

tenant and instead entered into the management agreement with Insight which allowed it to derive

some value from the premises through the operational reserve payments and gross profits. As a

result, the court used the difference between the agreed upon rent in the lease with Adlabs minus the

operational reserves and gross profits from the management agreement less the portion of real estate

taxes Adlabs had agreed to pay as the measure of damages. The court then calculated the damages,

with the assumption that Newburgh would renew the five-year management agreement with Insight

---

[2]The court noted that the only evidence in the record supporting the failure to mitigate defense consisted of the fact that Newburgh selected the pre-opening budget proposed by Insight with the knowledge that its choice would affect its claim for damages against Adlabs. However, the court pointed out that Newburgh was not seeking to recover its pre-opening costs, so the fact that it chose the most expensive option was irrelevant to the failure to mitigate defense.

for years six through fifteen, and found that Newburgh was entitled to $4,870,243.71 in damages. Finally, the court found that Newburgh was entitled to judgment as a matter of law on Adlabs's counterclaims for breach of contract and reformation.

Adlabs subsequently filed a motion for reconsideration under Federal Rules of Civil Procedure 59 and 60 and Local Rule 7.1(h). Adlabs argued that the district court erred in granting summary judgment because it "shifted" the burden of proof on the reasonable rental value element of Newburgh's damages claim to Adlabs by not requiring Newburgh to demonstrate reasonable rental value. Adlabs also contended that the court erred in denying it leave to amend its answer and affirmative defenses because its failure to mitigate defense would not be futile and Newburgh would not be surprised or prejudiced by the addition of the proposed counterclaim and affirmative defense.

The district court denied the motion for reconsideration, finding that Adlabs forfeited its damages argument because it failed "to raise it before the entry of final judgment," that the court had already considered and rejected the surprise and prejudice argument in the motion for leave to amend, and that the claim that Newburgh failed to mitigate by rejecting Adlabs's post-breach offers to reinstate the lease would not be considered because it was raised for the first time in the motion to reconsider. The district court also struck new evidence submitted by Adlabs in support of its motion for reconsideration, on the grounds that it was not part of the record when summary judgment was entered and Adlabs made no argument that the evidence was unavailable at the time judgment was entered. Adlabs timely appealed.

II.

Newburgh contends that by failing to raise the issue before the entry of judgment, Adlabs has waived its right to appellate review of its argument that the district court incorrectly shifted the burden of proof regarding damages to Adlabs. Adlabs argues that the general waiver rule should not apply on the burden of proof issue.

In general, arguments not raised before the district court are deemed waived on appeal to this court. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008). Despite this general waiver rule, this court has occasionally exercised its discretion to deviate from the rule in exceptional cases or if the application of the rule would result in a miscarriage of justice. *Id.* The exercise of such discretion is guided by considering:

> 1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts; 2) whether the proper resolution of the new issue is clear beyond doubt; 3) whether the failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and 4) the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court.

*Girts v. Yanai*, 600 F.3d 576, 586 n.8 (6th Cir. 2010) (citing *Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996)). This court exercises such discretion very rarely and generally focuses on "whether the issue was properly raised before the district court." *Scottsdale Ins.*, 513 F.3d at 552–53. Further, "absent a legitimate excuse, an argument raised for the first time in a motion for reconsideration at the district court generally will be forfeited." *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331–32 (6th Cir. 2009) (citing *Scottsdale Ins.*, 513 F.3d at 553).

Adlabs raised its burden of proof argument regarding damages for the first time in its motion for reconsideration. However, Adlabs had clear opportunities to raise the issue prior to the district court's entry of summary judgment. For instance, Adlabs failed to challenge the measure of damages in its response to Newburgh's summary judgment motion. Instead, Adlabs's brief in opposition primarily argued that Adlabs did not breach the contract and that Newburgh failed to satisfy lease preconditions. In the portion of the brief that does refer to damages, Adlabs argued that even if it is assumed that it breached the contract, Newburgh "is not entitled to damages" because: (1) the damages claimed for year one would be reduced since possession was not delivered and monthly rent would therefore be reduced by fifty percent, (2) Adlabs should not have to pay taxes due for 2009 when possession was not delivered, and (3) Newburgh did not mitigate damages because it acknowledged that its damages claim would be affected by its choice of pre-opening budgets proposed by Insight. Newburgh's summary judgment motion relied on the proposition that under Michigan contract law as set forth in *Tel-Ex Plaza*, a landlord is entitled to damages equivalent to the excess of the agreed-upon rent and other charges over the rent and other charges that may be obtained through reasonable diligence. Newburgh argued that under *Tel-Ex Plaza*, its damages should therefore be "the difference between (I) the rent and taxes due under the Adlabs lease and (ii) the Operational Reserves and Gross Profits under the Management Agreement, less the real estate taxes due." Adlabs did not challenge the basis for Newburgh's damages calculations or argue that under *Tel-Ex Plaza* or any other applicable case that the value derived from the management agreement was an inappropriate proxy for the reasonable rental value of the premises. Further, Adlabs failed to respond to Newburgh's supplemental brief on damages, which was filed in response

to the district court's request for additional briefing on the issue of what damages Newburgh was entitled to for the period following the expiration of the five-year management contract. Adlabs does not offer an excuse for its failure to challenge the measure of damages before the entry of final judgment by the district court.

Further, the factors that guide this court's decisionmaking process when considering whether to deviate from the general rule of waiver also point to the conclusion that Adlabs has waived its burden of proof argument. First, the question of which party bears the burden of proof is a pure question of law, but whether the district court inappropriately shifted the burden of proof on damages is not a pure question of law. *See Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 984 (6th Cir. 2000) (finding it appropriate to consider an unbriefed issue that involved pure questions of law). The district court found that Newburgh had not presented evidence of the rental value of its premises, because its attempts to secure a new tenant failed. Newburgh argues that when the district court's statement that Newburgh provided "no evidence of the rental value" is read in context, the decision's text reflects the fact that the district court made a factual finding regarding the rental value of the premises—namely, that the effective rental value was zero. Resolution of this issue would thus require a determination of facts, which counsels against reaching the issue. *See Fairlane Car Wash, Inc. v. Knight Enters.*, 396 F. App'x 281, 287–88 (6th Cir. 2010). Similarly, Adlabs has not demonstrated that resolution of this issue is clear because although Adlabs argues that Newburgh failed to establish an essential element of its claim, the district court found that Newburgh had in fact presented sufficient evidence to support the damages award. Declining to take up the issue also will not result in a miscarriage of justice in this situation because Adlabs had prior opportunities to raise

the issue before the district court but failed to do so. *See Scottsdale Ins. Co.*, 513 F.3d at 553; *Taft*

*Broad. Co. v. United States*, 929 F.2d 240, 245 (6th Cir. 1991). Finally, both parties are entitled to

have the damages issue addressed in the first instance by the district judge and reaching the issue

would deny Newburgh the right to oppose the burden-shifting argument before the district court.[3]

*Taft Broad. Co.*, 929 F.2d at 245. On balance, the factors do not weigh in favor of reaching the

issue.

Because Adlabs attempted to raise its argument for the first time in a motion for

reconsideration and fails to offer a legitimate excuse for its failure to address the measure of damages

in any way prior to the district court's entry of summary judgment, despite clear opportunities to

address the issue, we find that Adlabs has waived its "burden-shifting" argument. *See Huntington*

*Nat'l Bank*, 574 F.3d at 331–32.

### III.

Adlabs also argues that the district court erred in denying its motion for leave to amend its

pleadings to add an affirmative defense of failure to mitigate damages. Newburgh argues that

Adlabs waived any argument regarding the mitigation of damages. Adlabs maintains that it has not

waived its mitigation of damages argument because (1) although it did not address the affirmative

defense in its motion for leave to amend directly, it did include the affirmative defense in its

proposed amended answer, (2) the district court addressed the issue in its denial of the motion for

leave to amend, (3) Newburgh had notice of the defense, and (4) a failure to raise an affirmative

---

[3]However, it is true that reaching the issue would allow Adlabs to have an appellate court review the issue.

defense by responsive pleading does not require a finding of waiver. However, even assuming that waiver does not apply, we find that the district court properly denied Adlabs leave to amend its pleadings.

This court reviews a district court's denial of a motion to amend for abuse of discretion. *See Korn v. Paul Revere Life Ins.* Co., 382 F. App'x 443, 448 (6th Cir. 2010); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). A district court's decision to deny a motion to amend is given great deference and will only be disturbed if the district court "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Korn*, 382 F. App'x at 448 (internal quotation marks omitted). Although Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that generally a district court must freely grant leave to amend, if a proposed amendment is so late that it would require the modification of a Rule16 scheduling order, "the movant must demonstrate 'good cause' for his failure to amend at a time that would not have required modification of the scheduling order." *Id.* at 449 (citing *Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003)). Under Rule 16, "good cause" may be demonstrated by showing that despite the moving party's diligent efforts, the party could not comply with the original deadline. *See Leary*, 349 F.3d at 907. Further, a district court must consider potential prejudice to the nonmovant when deciding whether or not to amend a scheduling order. *Id.* at 909.

The district court's Rule 16 scheduling order provided that pretrial motions must be filed by November 30, 2009, and instructed that joinder of new parties or amendment of the pleadings shall occur only by court order. The natural and logical interpretation of the scheduling order is that the November 30, 2009 deadline governed motions to amend the pleadings. Because Adlabs filed its

motion for leave to amend on April 8, 2010—more than four months after the November 30, 2009

deadline—the district court would have to modify the scheduling order to entertain the motion.

Adlabs must thus demonstrate good cause for failing to amend before the deadline. *See Korn*, 382

F. App'x at 449. In its motion for leave to amend, Adlabs contended that good cause existed to

modify the scheduling order to add its claim for specific performance because Newburgh was unable

to provide the premises according to the terms of the lease until December 2009,[4] which was after

the November 30 deadline. Adlabs also argued, and continues to argue on appeal, that allowing the

requested amendments to the pleadings would neither surprise nor prejudice Newburgh.

Adlabs's attempt to demonstrate good cause for its failure to move to amend before the

scheduling order deadline passed is unavailing. Adlabs proffers no argument to excuse its failure

to move to amend to include the affirmative defense of failure to mitigate damages[5] before

November 30, 2009, beyond its general argument about the lack of prejudice and surprise. Adlabs's

motion for leave to amend did not address why it did not plead the mitigation defense earlier. In fact,

as the district court noted, the brief in support of the motion does not even refer to the mitigation

argument. Instead, the mitigation defense is only contained in the proposed amended answer.

---

[4]Adlabs asserted that the premises could not be delivered according to the terms of the lease prior to December 2009 because AMC occupied the premises until the end of October 2009 and because of the lack of trade fixtures and equipment, which was no longer an issue by December 2009 because the premises were once again being operated as a movie theater as of December 2009.

[5]In its reply brief, Adlabs concedes that "a breaching party is not entitled to specific performance and that adding the proposed [specific performance] counterclaim would therefore be futile." In light of this concession, Adlabs has limited its challenge to the denial of its motion for leave to amend to arguments relating to its mitigation defense, arguing that "even without this counterclaim, the outcome should be the same, because Newburgh has a duty to mitigate."

-13-

Adlabs admits in its brief that it was not diligent in seeking leave to amend because it "should have recognized the importance of the mitigation defense earlier . . . , and Adlabs regrets this oversight."

Adlabs would have known about Newburgh's efforts at mitigation by the close of discovery, which was scheduled to end on October 30, 2009, and apparently ended sometime around November 3, 2009, when Adlabs finished deposing Newburgh's representatives. As the deadline for amending the pleadings was not until November 30, 2009, Adlabs had time to move to amend to add the affirmative defense prior to the expiration of the deadline and could have complied with the deadline with the exercise of diligence. Adlabs instead waited until April 2010 to attempt to add the affirmative defense of failure to mitigate and fails to offer a credible explanation for its lack of diligence.

Although Adlabs argues that Newburgh would not be prejudiced by its proposed amendments, the district court concluded that allowing the proposed amendments would result in significant prejudice to Newburgh. The district court based its conclusion on the facts that Newburgh had already moved for summary judgment on its contract damages claim and Adlabs's original counterclaims, Newburgh would need to move the court to reopen discovery, and Newburgh would then need to expend further resources to engage in additional discovery in order to address the new counterclaim and affirmative defense. Although Newburgh argued that it appropriately mitigated its damages in its motion for summary judgment, it necessarily would not have known the basis upon which Adlabs would raise such an affirmative defense and would likely need to engage in additional discovery in order to understand the basis for Adlabs's defense and to respond appropriately to it. This court has previously upheld the denial of a motion to amend where the case

had progressed past the discovery deadline and the original filing deadline for dispositive motions when the nonmoving party had already moved for summary judgment in part because the addition of the new claims would cause prejudice to the nonmoving party at such a late stage in the litigation. *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009); *Leary*, 349 F.3d at 909; *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir.1999). It was not an abuse of discretion for the district court to find that Newburgh would be prejudiced should Adlabs's motion to amend be granted.

Because Adlabs was aware of the basis for its failure to mitigate damages affirmative defense for many months and did not pursue it until April 2008, it cannot demonstrate that "despite [its] diligence [it] could not meet the original deadline," and therefore cannot establish the good cause necessary to support modification of the scheduling order. *See Leary*, 349 F.3d at 907–08. In light of Adlabs's failure to demonstrate good cause for failing to seek leave to amend earlier and the prejudice that Newburgh would suffer if Adlabs was permitted to amend its pleadings, it was not an abuse of discretion for the district court to deny Adlabs's motion for leave to amend because the Rule 16 deadline had passed.[6]  *See id.* at 907–09.

---

[6]Because we affirm the district court's denial of the motion for leave to amend on the grounds that Adlabs failed to meet its burden of establishing good cause and the lack of prejudice to the nonmovant under *Leary*, we do not reach the alternative grounds for the district court's decision, that Adlabs was not entitled to amendment of its pleadings under Rule 15, and that, in any event, the proposed amendments would be futile.

IV.

Adlabs further argues that the district court abused its discretion when it *sua sponte* struck from the record exhibits that Adlabs submitted in support of its motion for reconsideration. The stricken exhibits, which Adlabs attached to its appellant's brief, are letters from Adlabs to Newburgh dated October 12, 2009 and December 23, 2009, offering to resume the lease, which Adlabs argued were relevant to its mitigation defense. Adlabs contends that allowing the district court to strike such exhibits would allow the court "to shield its decision from meaningful review."

A district court's decision regarding evidentiary matters is reviewed for an abuse of discretion. *See Briggs v. Potter*, 463 F.3d 507, 511 (6th Cir. 2006) (reviewing district court decision not to consider portion of affidavit submitted in appendix to motion in opposition to summary judgment motion for abuse of discretion); *Harris v. City of St. Clairsville*, 330 F. App'x 68, 70–74 (6th Cir. 2008) (reviewing district court's *sua sponte* decision to strike exhibits submitted in response in opposition to summary judgment motion for abuse of discretion).

Evidence not before a district court at the time of the entry of judgment, but available before the entry of final judgment is not properly considered in support of a motion for reconsideration. *See CGH Transport, Inc. v. Quebecor World, Inc.*, 261 F. App'x 817, 824 (6th Cir. 2008) (finding that district court did not abuse its discretion in denying motion for reconsideration where alleged newly discovered evidence was not previously unavailable). Here, the exhibits proffered by Adlabs were clearly within its possession before the court entered judgment in favor of Newburgh in July 2010, as they were letters Adlabs sent to Newburgh in October and December 2009. Thus, the exhibits were not unavailable to Adlabs prior to the entry of judgment. The district court had the discretion

to decline to consider such evidence. *See Turcar, LLC v. I.R.S.*, 451 F. App'x 509, 516 (6th Cir. 2011) ("A district court's refusal to consider evidence produced for the first time on a motion for reconsideration will be reversed only if the refusal was an abuse of discretion."); *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 123 (6th Cir. 1982) (finding no abuse of discretion where district court refused to consider on motion for reconsideration evidence that was not newly discovered). Here, the district court expressly stated that it was not considering the evidence because it was not properly in the record at the time it entered summary judgment. Given that the district court did not abuse its discretion in declining to consider the new evidence submitted, it was also not an abuse of discretion for it to strike the letters. *See Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 & n.4 (7th Cir. 2000) (finding no abuse of discretion where district court refused to consider and struck from the record an affidavit submitted in support of motion for reconsideration that contained new evidence previously available). Moreover, even if the district court's further action in striking the evidence was in error, it was harmless as the district court's denial of the motion for reconsideration did not turn on the stricken exhibits. *See Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986) (finding that decision of district court to strike motion for reconsideration was harmless error). Finally, contrary to Adlabs's contention, the district court's decision is not shielded from review by the striking of the exhibits because its denial of the motion for reconsideration did not turn on the submitted exhibits.

V.

For the foregoing reasons, we affirm the decision of the district court.